(No. 48517.

THE PEOPLE *ex rel.* RANDALL L. GIBSON, Appellee, v. JOSEPH CANNON, Warden, Appellant.

*Opinion filed December 3, 1976.*

Martin Rudman, State's Attorney, of Joliet (Thomas E. Cowgill, Assistant State's Attorney, of counsel), for appellant.

Robert Agostinelli, Deputy Defender, and Mark W. Burkhalter, Assistant Defender, Office of State Appellate Defender, of Ottawa, for appellee.

MR. JUSTICE CREBS delivered the opinion of the court:

In this case we are asked to decide whether section 5—8—4(f) of the Unified Code of Corrections as it read when defendant was sentenced (Laws of 1972, at 2258), mandated consecutive sentencing where the defendant received a sentence based upon an offense committed while on parole.

On April 27, 1971, Randall L. Gibson was sentenced by the circuit court of Cook County to concurrent terms of one to five years in the penitentiary for the offenses of robbery and aggravated battery. On December 22, 1971, he was released on parole. On June 9, 1973, Gibson, still on parole, was arrested and charged with burglary. A guilty plea was entered in the circuit court of Cook County, and on December 3, 1973, the defendant was sentenced to a term of one year to one year and a day in the penitentiary. On February 4, 1974, Gibson was declared a parole violator by the Parole and Pardon Board. On April 22, 1974, Gibson was informed by the Department of Corrections that he would have to serve one year before being eligible for parole, since his burglary sentence was to run consecutively.

On July 31, 1974, Gibson filed a petition for a writ of *habeas corpus* in the circuit court of Will County. Named as respondent in the petition was Joseph Cannon, warden of Stateville Correctional Center. The basis for the petition was Gibson's claim that, since the trial court's judgment order did not provide for consecutive sentencing, his burglary sentence should have run concurrently with his prior sentences. Arguing from this premise, the petitioner contended that he had fully served the sentences imposed upon him, taking into account credits earned, and that he was therefore being held by the Department illegally. The trial court denied the relief sought and dismissed the petition. On appeal, the Appellate Court for the Third District reversed and remanded. (*People ex rel. Gibson v.*

*Cannon,* 37 Ill. App. 3d 69.) We have granted the respondent leave to appeal from the judgment of the appellate court.

The statutory provision at issue is section 5—8—4(f) of the Unified Code of Corrections (hereinafter the Code), which provided at the time of the petitioner's sentencing, in relevant part, as follows:

"A sentence of an offender committed to the Department of Corrections at the time of the commission of the offense shall not commence until expiration of the sentence under which he is held by the Department of Corrections." (Laws of 1972, at 2258.)

In construing this provision, the appellate court followed two prior Fourth District Appellate Court decisions (*People v. Cherry,* 29 Ill. App. 3d 929; *People v. Griffith,* 26 Ill. App. 3d 405) and held that the statute "does not require a parolee's sentence for an offense committed while on parole, to run consecutively to the sentence underlying the parole." 37 Ill. App. 3d 69, 71.

Where the meaning of a statute is in dispute, the threshold task of a court is to examine the terms of the statute itself. As we stated in *General Motors Corp. v. Industrial Com.,* 62 Ill. 2d 106, 112: "The cardinal rule of all statutory construction, to which other rules are subordinate, is that the true intent and meaning of the legislature must be ascertained and given effect. [Citation.] The language used in a statute is the primary source for determining this intent, and where that language is certain and unambiguous, the proper function of the courts is to enforce the statute as enacted." (See also *Certain Taxpayers v. Sheahen,* 45 Ill. 2d 75, 84.) Looking, then, to the language of section 5—8—4(f), we observe that the statute applies only to those who are "committed to the Department of Corrections at the time of the commission of the offense." (Laws of 1972, at 2258.) Respondent argues that the statute is applicable here, since an offender continues to be "committed to the Department" subsequent to his release on parole.

Assuming that a parolee is so committed, petitioner argues that section 5—8—4(f) still does not apply, because the statute requires that a sentence for a subsequent offense "shall not commence until expiration of the sentence under which [the offender] is *held* by the Department of Corrections." (Emphasis added.) (Laws of 1972, at 2258.) For section 5—8—4(f) to apply, therefore, the offender must be "held" by the Department at the time of the commission of the offense. Petitioner asserts that "held" in this sense signifies incarceration, so that a person who has been released on parole is no longer "held" by the Department within the meaning of the statute.

When a person is released on parole, the Department retains custody. (Ill. Rev. Stat. 1973, ch. 38, par. 1003—14—2(a).) This "custody" is constructive, rather than physical (*People ex rel. Scott v. Jones,* 44 Ill. 2d 343, 347), and the term serves to describe the parolee's legal status and his relationship with the Department (*People ex rel. Jefferson v. Brantley,* 44 Ill. 2d 31, 33). The word "commitment," when applied to the parolee, is similarly descriptive of the legal, as opposed to physical, restraints upon a parolee. On the other hand, "[t]he word 'held' has no primary or legal technical meaning," so that "[t]he meaning to be given to the word is determined largely by the connection in which it is used." (*Chicago Home for Girls v. Carr,* 300 Ill. 478, 484.) "Held" connotes a state or degree of physical restraint. In this sense, the term is seemingly inconsistent with the parolee's status as a person released from confinement, and subject only to the constructive custody of the Department. This lack of physical restraint is underscored by the fact that a parolee is entitled to a hearing before his parole is revoked, at which time he may "appear and answer the charge of parole violation" and "bring witnesses on his behalf." Ill. Rev. Stat. 1973, ch. 38, par. 1003—3—9(e)(1), (2).

Accordingly, section 5—8—4(f) is ambiguous on its face. "By well settled principles of law, a criminal or penal statute is to be strictly construed in favor of an accused,

and nothing is to be taken by intendment or implication against him beyond the obvious or literal meaning of such statutes." (*People v. Eagle Food Centers, Inc.* 31 Ill. 2d 535, 539.) "If a statute creating or increasing a penalty or punishment be capable of two constructions, undoubtedly that which operates in favor of the accused is to be adopted." (*People v. Lund,* 382 Ill. 213, 215-16.) Applying these principles, we judge that section 5—8—4(f) must be construed so as not to apply to those who are on parole at the time of the commission of a subsequent offense.

The respondent contends that resort to the legislative history of section 5—8—4(f) reveals an intent on the part of the General Assembly to enlarge the scope of the mandatory consecutive sentencing requirement so as to include parolees. We do not agree. The predecessor to section 5—8—4(f) was section 14 of "An Act in relation to the Illinois State Penitentiary," which read in pertinent part as follows:

> "When any crime is committed within any division or part of the penitentiary system by any person confined therein, cognizance thereof shall be taken by any court of the county wherein such division or part is situated having jurisdiction over the particular class of offenses to which such crime belongs. Such court shall try and punish the person charged with such crime in the same manner and subject to the same rules and limitations as are now established by law in relation to other persons charged with crime in such county. But in the case of conviction, the sentence of said convict shall not commence to run until the expiration of the sentence under which he is then held in confinement in the penitentiary system." (Ill. Rev. Stat. 1971, ch. 108, par. 118.)

In *People ex rel. Neville v. Ragen,* 396 Ill. 565, this court held that section 14 did not apply to parolees.

With the adoption of the Unified Code of Corrections, effective January 1, 1973, the content of section 14 was carried forward in sections 3—6—5 and 5—8—4(f). Section 3—6—5 provides in relevant part:

> "When any person is charged with committing an offense while confined by t..e Department, cognizance

thereof shall be taken by the circuit court of the county wherein such crime was committed. Such court shall adjudicate and sentence the person charged with such crime in the same manner and subject to the same rules and limitations as are now established by law in relation to other persons charged with crime." (Ill. Rev. Stat. 1973, ch. 38, par. 1003—6—5.)

A comparison of the two statutes indicates that whereas the former section 14 was limited to those who were "held in confinement in the penitentiary system," the current section 3—6—5 includes any person "confined by the Department." The council commentary to section 3—6—5 states: "This section substantially reenacts former law, except that the language makes it uniformly applicable to all persons within the Department and not solely to those confined in adult, male institutions." Ill. Ann. Stat., ch. 38, par. 1003—6—5, at 144 (Smith-Hurd 1973).

Section 3—6—5 thus enlarges upon the scope of section 14. The respondent perceives an additional expansion in section 5—8—4(f)'s omission of the word "confinement." As previously noted, section 5—8—4(f) requires that the offender be "held by the Department" at the time of the commission of the offense. In our judgment, the mere failure to add the words "in confinement" offers no strong evidence of any legislative intent to subject a whole new class of offenders to the mandatory consecutive sentencing requirement, especially since the words "in confinement" would be, in this context, arguably surplusage.

Respondent also relies upon the fact that section 5—8—4(f), as originally enacted, included the words "under Section 3—6—5," so as to read: "A sentence under Section 3—6—5 of an offender committed to the Department of Corrections at the time of the commission of the offense shall not commence until expiration of the sentence under which he is held by the Department of Corrections." (Laws of 1972, at 2258.) This phrase was deleted prior to the effective date of the Code through

enactment of Public Act 77—2827, approved December 22, 1972. The respondent argues that since section 5—8—4(f) originally referred to section 3—6—5, which by its terms is limited to those "confined by the Department," by removing that reference, the General Assembly intended to enlarge the scope of section 5—8—4(f) so as to encompass those serving on parole.

It is true that, where a statute is amended, it will be presumed that the legislature intended to effect some change in the law as it formerly existed. (*Scribner v. Sachs,* 18 Ill. 2d 400, 411.) We do not agree, however, that the legislature in this case intended the change for which the respondent contends. Section 3—6—5 is not itself a sentencing statute, but instead mandates that a confined person committing a crime shall be tried and sentenced "in the same manner and subject to the same rules and limitations as are now established by law in relation to other persons charged with crime." (Ill. Rev. Stat. 1973, ch. 38, par. 1003—6—5.) Consequently, since section 3—6—5 is not itself a sentencing statute, the original language of section 5—8—4(f) alluding to a "sentence under Section 3—6—5" was somewhat anomalous. It was understandable, therefore, that the General Assembly chose to remove the words "under Section 3—6—5" from section 5—8—4(f). Such a conclusion is also consistent with the general housekeeping nature of the amendments made by Public Act 77—2827.

We would point out that a construction of section 5—8—4(f) so as not to apply to parolees is fully in accord with what we perceive to be the underlying legislative purpose in devising a mandatory consecutive sentencing requirement. Where an offender is already incarcerated, the prospect of a concurrent sentence may not serve as an effective deterrent to future crime, unless such a sentence would be significantly longer than the sentence originally imposed. A mandatory consecutive sentencing requirement provides this deterrent. Where an offender is on parole,

however, the prospect of a parole revocation itself acts to discourage crime. In such a case, concurrent sentencing may be the most appropriate disposition.

Since section 5—8—4(f) did not mandate that petitioner's burglary sentence run consecutively to his prior sentences, and since the trial court's judgment order did not provide for consecutive sentencing, the sentence was to run concurrently. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—4(a).) Accordingly, the judgment of the appellate court is affirmed and the cause is remanded to the trial court for further proceedings consistent with the views expressed herein.

*Affirmed and remanded.*