WASTE MANAGEMENT OF ILLINOIS, INC., Plaintiff-Appellant, v. THE ENVIRONMENTAL PROTECTION AGENCY *et al.*, Defendants-Appellees.

First District (5th Division) No. 84—0658

Opinion filed October 11, 1985.—Rehearing denied November 19, 1985.

Arthur M. Holtzman, of Pedersen & Houpt, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (William Barzano, Assistant Attorney General, of Chicago, of counsel), for appellees.

PRESIDING JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Waste Management of Illinois, Inc., filed an amended complaint seeking declaratory judgment that the attempt of the defendants, Illinois Environmental Protection Agency (the Agency) and its director, Richard Carlson, to collect fees on hazardous waste received for treatment by plaintiff at its CID facility from April 1, 1980, to June 17, 1982, was invalid, and also seeking a preliminary and permanent injunction against assessing and collecting the fees. An agreed order for preliminary injunction was entered. Thereafter plaintiff's motion for summary judgment on count III, which alleged that defendants exceeded statutory authority, was denied. Following trial on count III of the amended complaint, the court entered a judgment order thereon in favor of defendants and against plaintiff. The order found no just reason for delaying enforcement or appeal of the final judgment on count III pursuant to Supreme Court Rule 304(a) (87 Ill. 2d R. 304). Plaintiff appeals from that order.

The central issue on appeal is whether the Agency is authorized to collect the fee for hazardous waste which plaintiff receives for treatment at its CID facility and later deposits at the site.

The pertinent facts are not in dispute. Plaintiff is engaged in the business of treating and disposing of hazardous waste and operates the CID facility in Calumet City. The facility is a 429-acre compound containing several distinct areas at which certain differentiable operations take place. Hazardous waste is received for either disposal or treatment. The treatment occurs at a different area of the facility than the disposal. At one area, hazardous wastes are treated either by the on-site pug mill or by being processed through the dewatering system which removes chemical solids and other contaminants from water-base wastes. The treated wastes are then deposited at the CID landfill, and the treated waters are returned to the regular municipal sewage disposal system. At two other areas at the facility, hazardous waste is received for direct disposal without treatment. From April 1, 1980, to June 17, 1982, the Agency assessed the fee on hazardous waste received by plaintiff at its CID facility for disposal but not on hazardous waste received for treatment.

On or about June 17, 1982, the agency and its director Richard Carlson advised plaintiff in a letter that hazardous waste received for treatment by plaintiff at its CID facility would be subject to the fee established by section 22.2 of the Illinois Environmental Protection Act (Ill. Rev. Stat. 1981, ch. 111½, par. 1022.2), and retroactively assessed the fee on all hazardous waste received for treatment at the

facility for the period from April 1, 1980, to June 17, 1982. Plaintiff thereupon brought this action on August 16, 1982.

Plaintiff's initial complaint against the defendants contained four counts. An amended complaint was thereafter filed adding a fifth count. Count I alleged that defendants violated the Illinois Administrative Procedure Act; count II alleged impermissible retroactive rule making; count III alleged that such conduct violated statutory authority; count IV alleged violations of the constitutions of Illinois and the United States; and count V alleged discrimination in favor of the on-site waste disposers. Each of the five counts sought a preliminary and thereafter a permanent injunction to enjoin the assessment and collection of a fee on hazardous waste received for treatment by the facility and a declaratory judgment invalidating the June 17, 1982, order of the Agency. Count V additionally requested as alternative relief an order that the Agency assess and collect the fee on all hazardous waste disposed of at all other hazardous waste disposal sites, including those of on-site generators. Defendants filed an answer and also a counterclaim for judgment against the plaintiff for the fee for all hazardous waste received for treatment at its CID facility since April 1, 1980, plus interest.

Following the entry on August 26, 1982, of an agreed order for preliminary injunction enjoining collection of the fee for hazardous wastes received for treatment since April 1, 1980, plaintiff filed a motion for summary judgment on count III which was denied by the trial court. The matter proceeded to trial on count III of the amended complaint upon the pleadings, affidavits, memoranda and arguments of counsel. In announcing its decision, the trial court stated in pertinent part:

"I think under all the circumstances considering the type of material that is the subject of the litigation, waste of a hazardous nature, the statutes and actions of the Legislature in conjunction with the statutes and all memoranda and arguments that have been submitted on the general question of disposal and treatment of hazardous waste materials have always been centered intensively on what should be the public interest. It really is not a question of fees. It is not a question of convenience. It is not a question of anything other than hazardous waste has created a situation that very seriously affects the public, the welfare of the public, the health of the public, and the right of the public generally to be protected against or free of any deleterious conditions against hazardous waste in existence, whether it be hazardous waste for the disposal or hazard-

ous waste for the process of treatment. \*\*\* [G]etting down to what appears to be the rock-bottom consideration of the situation, hazardous waste, whether it is for disposal or whether it is for treatment, is still hazardous waste. And for the period of its storage, no matter how long a period of time it may be stored or how short a period of time it may be stored, it still is hazardous waste bearing a complexion or a content that can be deleterious to the welfare of the public.

I think that the Court must assume this position; that because we have one site, because we do not have an existence of contiguity, because we have a situation requiring the delivery and disposition of all types of hazardous waste, whether indicated for disposal or treatment, said disposition being on the one site which contains both an area for storing and a pug mill for treatment, that the fair interpretation of the Court must place upon the condition that it is one site upon which hazardous waste is stored.

Consequently, the Court finds it necessary to be in agreement with the position of the State that whether or not the hazardous waste is tagged for purposes of disposal or tagged for the purpose of treatment, the fact that it is delivered and stored in the one site placed it in a category that makes it a subject of the provisions of the State regarding payment of the necessary fee. So the Court will so rule."

On March 6, 1984, the court entered a judgment order on count III which incorporated its oral opinion and found that plaintiff's hazardous waste treatment facility is part of plaintiff's CID hazardous waste disposal site and is not a separate or independent site, and that section 22.2 imposes the hazardous waste fee on all hazardous waste received by plaintiff at its CID site whether or not said hazardous waste is treated at plaintiff's hazardous waste treatment facility. The order then entered judgment for defendants and against plaintiff on count III and found no just reason for delaying enforcement or appeal pursuant to Supreme Court Rule 304 (87 Ill. 2d R. 304).

Plaintiff appeals the decision as to count III. The other counts remain pending in the trial court and are not before us.

I

OPINION

■■ We must first determine whether we have jurisdiction in the subject matter of this appeal, an issue we raised at oral argument. (*Prado v. Evanston Hospital* (1979), 72 Ill. App. 3d 622, 390 N.E.2d

1270; *In re Organization of Fox Valley Community Airport Authority* (1974), 23 Ill. App. 3d 168, 318 N.E.2d 496.) Plaintiff's appeal herein is from the judgment order entered only on count III of a multicount complaint, which order expressly found no just reason for delaying enforcement or appeal pursuant to Supreme Court Rule 304 (87 Ill. 2d R. 304). In accordance with subparagraph (a) of Rule 304, if multiple claims for relief are involved, an appeal thereunder may be taken from a final judgment as to fewer than all claims only if the trial court has made the express written finding that there is no just reason for delaying enforcement or appeal. (*Highway Industries, Inc. v. Trailer Leasing Co.* (1977), 48 Ill. App. 3d 235, 363 N.E.2d 60.) The required finding was entered herein. However, in addition, the order must be final in its character apart from that finding. *Smith v. Goldstick* (1982), 110 Ill. App. 3d 431, 442 N.E.2d 551; *O'Donnell v. Sears, Roebuck & Co.* (1979), 71 Ill. App. 3d 1, 388 N.E.2d 1073.

■ ■ If a single claim is presented in several ways by multiple counts, a separate appeal is not generally warranted upon denial of relief under only one of such counts. (*Prado v. Evanston Hospital* (1979), 72 Ill. App. 3d 622, 390 N.E.2d 1270.) However, the supreme court has observed that controversy arises as to the meaning to be given to the phrase "multiple claims." (*Ariola v. Nigro* (1958), 13 Ill. 2d 200, 204, 148 N.E.2d 787.) If the basis of recovery in each count is different, a judgment on one count is appealable under Rule 304(a) because a distinct cause of action has been disposed of. (*Cunningham v. Brown* (1961), 22 Ill. 2d 23, 174 N.E.2d 153; *Freeman v. White Way Sign & Maintenance Co.* (1980), 82 Ill. App. 3d 884, 403 N.E.2d 495.) The Illinois Supreme Court held in *Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 348, 459 N.E.2d 935, 938, that a distinct cause of action exists "when the grounds for recovery under the various counts derive from different statutes or common law doctrines (*Cunningham v. Brown*) or when the various theories of recovery require 'different elements *** to establish a proper claim' or involve 'differing standards of plaintiff's conduct which will bar recovery' (*Freeman v. White Way Sign & Maintenance Co.* (1980), 82 Ill. App. 3d 884, 891)."

■ If the instant appeal is not determined in plaintiff's favor, plaintiff may attempt to pursue the remaining counts of the complaint in the trial court. Although this seems exactly the kind of piecemeal approach to litigation that should generally be avoided, we are compelled to find the dismissal of count III to be final and appealable. It is a final order as to a distinct cause of action involving interpretation of the language of the Environmental Protection Act, (Ill. Rev. Stat.

1983, ch. 111½, par. 1022.2), and is not directly related to the other theories advanced in the remaining counts I, II, IV and V. (*Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 459 N.E.2d 935.) However, given the fact that all five counts of the complaint relate directly to challenging a single decision of the Agency, interests of judicial economy might have been better served if the other counts of the complaint had been addressed before seeking the appeal pursuant to Rule 304(a) (87 Ill. 2d R. 304(a)). We now address the merits.

## II

Plaintiff contends that section 22.2 of the Illinois Environmental Protection Act (the Act) does not authorize the Agency to collect a fee for the hazardous waste received for treatment at its CID facility. (Ill. Rev. Stat. 1983, ch. 111½, par. 1001. *et seq.*; 1022.2.) Plaintiff argues that the statute's plain meaning authorizes the fee only on hazardous waste received for direct disposal, but not on such waste received for treatment. It maintains that collection of the fee on the latter therefore exceeds the statutory authority and is contrary to the intent of the Act. Defendants respond that it is irrelevant that plaintiff may provide some sort of treatment, because section 22.2 clearly states that the fee shall be collected for hazardous waste received at plaintiff's hazardous waste disposal site and does not limit the fee to hazardous waste received only for disposal without treatment. In the instant case, the period for which the fee on hazardous waste received for treatment was assessed extended from April 1, 1980, to June 17, 1982. Our review of the applicable statute is limited to such period.

Section 22.2 was added to the Illinois Environmental Protection Act by Public Act 81—856, effective January 1, 1980, which initially provided in relevant parts as follows:

"Sec. 22.2 (a) There is hereby created within the State Treasury a special fund to be known as the 'Hazardous Waste Fund', constituted from the fees collected pursuant to this section. The Fund shall not exceed $25,000,000, except that such limitation shall be increased to the extent necessary to permit any monies earned as interest to be paid into such Fund.

(b) The Agency shall collect, from the owner or operator of each hazardous waste disposal site, a fee in the amount of 1¢ per gallon or $2.02 per cubic yard of hazardous waste received on and after the effective date of procedures established by the Agency under subparagraph (c) of this Section." (Ill. Rev. Stat. 1979, ch. 111½, par. 1022.2.)

Subsection (a) of section 22.2 was thereafter amended by Public Act

81—1484, effective September 18, 1980, to now provide:

"(a) There are hereby created within the State Treasury two special funds to be known respectively as the 'Hazardous Waste Fund' and the 'Hazardous Waste Research Fund', constituted from the fees collected pursuant to this Section." Ill. Rev. Stat. 1981, ch. 111½, par. 1022.2.

The dispute here concerns the applicability of the foregoing provisions of section 22.2 to the hazardous waste received by plaintiff at its CID facility for treatment. Both plaintiff and the Agency rely upon *People ex rel. Cruz v. Fitzgerald* (1977), 66 Ill. 2d 546, 551, 363 N.E.2d 835, 837, for the rule that where the language of a statute is clear and unambiguous, there is no need to resort to extrinsic aids of statutory construction and the plain language of the statute must be given effect. However, plaintiff contends that the Agency's classification of the CID facility as a hazardous waste disposal site for all hazardous waste received, whether for treatment or disposal, violates the purpose and intent of the legislature. Defendants respond that the plain language of section 22.2 demonstrates that all hazardous wastes received by a hazardous waste disposal site are subject to the fee thereunder.

 █ The primary rule of statutory construction is to ascertain and effectuate the legislature's intent. In doing so, a court looks first to the statutory language itself, and if the language is clear, the court must give it effect and should not look to extrinsic aids for construction. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 277, 469 N.E.2d 167.) If the statutory language is certain and unambiguous, the proper function of the court is to enforce the statute as enacted. (*People ex rel. Gibson v. Cannon* (1976), 65 Ill. 2d 366, 357 N.E.2d 1180.) There is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute imports. *Franzese v. Trinko* (1977), 66 Ill. 2d 136, 361 N.E.2d 585; *Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 350, 167 N.E.2d 169.

█ The Act expressly provides that its purposes include establishment of a program "to restore, protect and enhance the quality of the environment, and to assure that adverse effects upon the environment are fully considered and borne by those who cause them" (Ill. Rev. Stat. 1983, ch. 111½, par. 1002(b)), and that the Act should be liberally construed. (Ill. Rev. Stat., 1984 Supp., ch. 111½, par. 1002(c).) The trial court recognized that the protection of the public interest is the central concern in the disposal and treatment of hazardous waste, regardless of whether the waste is being disposed of directly or fol-

lowing treatment of some kind.

Plaintiff concedes that it owns and operates the CID1 and CID2 facilities which constitute the 429 acre compound at which hazardous wastes are received. The CID1 facility here involved consists of approximately 226 acres of the compound. However, plaintiff maintains that section 22.2 applies only to the hazardous wastes it receives for direct disposal and not to hazardous wastes which it also receives but treats prior to disposal at the site. The term "site" is defined in the Act as "any location, place, tract of land, and facilities, including but not limited to buildings, and improvements used for purposes subject to regulation or control by this Act or regulations thereunder." (Ill. Rev. Stat. 1981, ch. 111½, par. 1003(cc).) "Hazardous Waste Disposal Site" is defined as a site on which hazardous waste is disposed. (Ill. Rev. Stat. 1981, ch. 111½, par. 1003(k).)

" 'Disposal' means the *discharge, deposit*, injection, dumping, spilling, leaking *or placing of* any waste or *hazardous waste into or on any land* or water or into any well so that such waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 111½, par. 1003(e).

The evidence disclosed that an operating permit number 1974—39—OP dated February 14, 1975, was issued to plaintiff to operate a solid waste disposal site on CID1. Thereafter, plaintiff was issued supplemental permits by the Agency to receive and dispose of hazardous wastes at CID1. As such, it is a hazardous waste disposal site as defined in the Act. The Agency on November 18, 1980, issued its permit number 1980—2628 to supplement the initial permit number 1974—39—OP. It authorized plaintiff to operate "a liquid waste processing area at the subject facility," namely, to operate the pug mill on the CID1 facility which was clearly subject to regulation and control under the Act as a hazardous waste disposal site. The trial court expressly found that the treatment facility is part of plaintiff's hazardous waste disposal site and not a separate or independent site. It is well established that the findings of the trial court will not be disturbed on review if not against the manifest weight of the evidence. (*Pioneer Trust & Savings Bank v. County of Cook* (1978), 71 Ill. 2d 510, 377 N.E.2d 21.) Our review discloses that the finding was not against the manifest weight of the evidence.

Plaintiff also contends that the hazardous wastes it receives for treatment are rendered nonhazardous prior to disposal at the site. It argues that such treated wastes having been made nonhazardous

are therefore not subject to the fee under section 22.2. However, the evidence presented on behalf of plaintiff merely concluded that the treatment "removes chemical solids and other contaminants from water-base wastes. The treated wastes are then deposited at the CID landfill and the treated waters are returned to the regular municipal sewage disposal systems." Defendants' evidence discloses that any solid waste generated from the treatment of hazardous waste is itself a hazardous waste, and thus that the "treated wastes" from the instant treatment facility remain hazardous wastes in the absence of being delisted or shown to be nonhazardous as provided by the applicable Hazardous Waste Regulations. (35 Ill. Adm. Code secs. 721.103, 720.120, 720.122.) The trial court found that whether or not the hazardous waste is for disposal, treatment or storage, that nonetheless it is hazardous waste received at a hazardous waste disposal site as required in section 22.2 Accordingly, the finding is not against the manifest weight of the evidence and will not be disturbed. The trial court therefore did not err in concluding that the hazardous waste received was subject to the fee.

Section 22.2, in plain wording not otherwise defined, states that the fee shall be collected for "hazardous waste received" at a hazardous waste disposal site. It does not provide any other qualifications or limitations. It does not make any distinction between hazardous waste received for direct disposal or hazardous waste received for treatment prior to disposal of the residue. The express language is clear and unambiguous. As such, the court should not look to extrinsic aids for construction (*Fitzsimmons v. Norgle* (1984), 104 Ill. 2d 369, 472 N.E.2d 802; *In re Marriage of Logston* (1984), 103 Ill. 2d 266, 469 N.E.2d 167) nor depart from the plain language by reading into it exceptions, limitations, or conditions which conflict with the clearly expressed intent. (*Wielert v. Larson* (1980), 84 Ill. App. 3d 151, 404 N.E.2d 1111.) Neither will we, nor can we, inject provisions not found in a statute, however desirable or beneficial they may be. (*Droste v. Kerner* (1966), 34 Ill. 2d 495, 504, 217 N.E.2d 73, *overruled on other grounds in Paepcke v. Public Building Com.* (1970), 46 Ill. 2d 330, 263 N.E.2d 11.) Our function is to enforce the statute as enacted. (*People ex rel. Gibson v. Cannon* (1976), 65 Ill. 2d 366, 357 N.E.2d 1180.) In short, we are without authority to engage in any creative rewriting of the provisions. See *Reed v. United States* (7th Cir. 1984), 743 F.2d 481, 484.

Subsequent to the period here involved, subsection (b) as originally enacted was amended effective December 12, 1983, by Public Act 83—983 (the amendment), to now provide in relevant part:

"(b)(1) Until January 1, 1984, the Agency shall collect, from the owner or operator of each hazardous waste disposal site, a fee in the amount of 1¢ per gallon or $2.02 per cubic yard of hazardous waste received ***.

(2) On and after January 1, 1984, the Agency shall collect from the owner or operator of each of the following sites a fee in the amount of:

(A) 3 cents per gallon or $6.06 per cubic yard of hazardous waste received at a hazardous waste disposal site, ***;

* * *

(D) 1 cent per gallon or $2.02 per cubic yard of hazardous waste received for treatment at a hazardous waste treatment site, ***." Ill. Rev. Stat., 1984 Supp., ch. 111½, par. 1022.2

Defendants cited the foregoing amendment as supporting their position that the fee here is collectible for hazardous waste *received* at a hazardous waste disposal site. It was offered to demonstrate that had the legislature so intended it could have used either the term "disposed" or "received for disposal" in the prior provisions here applicable. However, plaintiff in its reply brief states that the fee differential in the amendment is consistent with its argument that imposition of the same fee on hazardous waste received for treatment would discourage treatment, contrary to the Act's purpose and intent "to restore, protect and enhance the quality of the environment." Ill. Rev. Stat. 1981, ch. 111½, par. 1002(b).

 We recognize that extrinsic aids are not to be utilized unless the statute construed is ambiguous. (See *People v. Alejos* (1983), 97 Ill. 2d 502, 511, 455 N.E.2d 48.) Even if we assume, arguendo, that the language of the prior section 22.2 is ambiguous, we find plaintiff's contention unpersuasive. Under the amendment, the section for the first time provides a separate category for the collection of the fee on hazardous waste received for treatment at a hazardous waste treatment site and retains the category for hazardous waste received at a hazardous waste disposal site. Although the same rate of 1 cent per gallon or $2.02 per cubic yard contained in the prior section is collectible on hazardous waste received *for treatment*, an increased rate of 3 cents per gallon or $6.06 per cubic yard is collectible on hazardous waste disposed. Subsection (b)(1) of the amendment, effective until January 1, 1984, retained the exact same language utilized prior to the amendment, "hazardous waste received." We find these factors to be insufficient to show that the collection of the same rate of fee in the instant case on hazardous waste received and hazardous waste received for treatment is contrary to the intent or purpose of the Act.

Furthermore, subsection (a), which remains unchanged in the amendment, continues to provide that the two special funds known as "Hazardous Waste Fund" and "Hazardous Waste Research Fund" are constituted from the fees collected. No intent to differentiate between the hazardous waste involved or as to the fees generated is indicated. The plain language of the statute, as well as accepted precepts of statutory construction, support the decision of the trial court.

For the foregoing reasons, the judgment is affirmed.

Affirmed.

SULLIVAN and PINCHAM, JJ., concur.