THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WINI-FRED L. MOSS, Defendant-Appellant.

Fifth District   No. 5—94—0227

Opinion filed August 9, 1995.

Theodore A. Gottfried, of State Appellate Defender's Office, of Springfield, Daniel M. Kirwan, of State Appellate Defender's Office, of Mt. Vernon, and Brian D. Lewis, of Marion, for appellant.

Rod Wolf, State's Attorney, of Harrisburg (Norbert J. Goetten, Robert J. Biderman, and Charles F. Mansfield, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE RARICK delivered the opinion of the court:

Defendant, Winifred Moss, was charged in the circuit court of Saline County with unlawful delivery of cocaine (count I) and unlawful possession of contraband (cocaine) in a penal institution (count II). At the time of the offense, defendant was on electronic home detention and living at his mother's house at 724 Beggs Street. Pursuant to a written electronic home detention agreement, defendant and his mother agreed that her home was an extension of a corrections facility. The alleged offenses took place in the driveway of Randy Moss, who lived in a mobile home at 712A Beggs Street.

At trial, the evidence revealed that an informant named Ginger Jeffers was sent to buy cocaine from defendant. Jeffers testified that she went to defendant's home, where she purchased two "rocks" of cocaine from defendant with money supplied by the police. Upon arriving, she saw Nicole Crawford and Robert Bryant. She testified that she met defendant in his driveway and asked to buy two "rocks," and defendant went into the trailer and came back out with the cocaine. Officer Philip Werkmeister testified that he arranged with Jeffers for her to attempt to purchase crack cocaine from Winifred Moss. He

and Officer Rob McConnell met Jeffers in a nearby cemetery, where he gave her $60 with which to purchase the cocaine. They thereupon drove to a point one block from the Winifred Moss residence. Approximately 10 minutes later, they observed Jeffers' vehicle and followed it back to the cemetery. Jeffers gave Werkmeister $10 and two bags of what was later determined to be crack cocaine. Nicole Crawford testified that on May 6, 1993, she was at the Winifred Moss residence, where she saw a girl named Ginger in her car in the driveway of the Randy Moss residence. Robert Bryant testified that he observed the defendant at Herbie Moss' trailer handing something in a plastic bag to a "skinny black guy," but he did not know what it was. Randy Moss denied that Bryant had been in his trailer.

Both defendant and his mother had previously signed "Electronic Detention Host Agreements" (Agreement) wherein they agreed, *inter alia*, not to knowingly permit the unauthorized use of controlled substances in their residence and, most importantly, that their home was an extension of defendant's "assigned placement in a correctional facility."

Defendant was convicted on both counts.

On appeal, defendant argues first that the trial court erred in ruling that, as a matter of law, anyone on electronic detention through the Department of Corrections (Department) is in a penal institution. Specifically, the trial court ruled:

> "[A] defendant who is under sentence to the Department of Corrections *** and on the electronic detention program, as a matter of law [, is] within a penal institution for the purposes of this unlawful possession of contraband in a penal institution."

The trial court further clarified its ruling during the hearing on defendant's post-trial motion:

> "[T]he Court's ruling is that if you are in a permissible place pursuant to that [electronic home detention] agreement then you are technically in a penal institution."

■ Section 31A—1.1(c)(1) of the Criminal Code of 1961 defines penal institution as:

> "any penitentiary, State farm, reformatory, prison, jail, house of correction, police detention area, half-way house *or other institution or place for the incarceration or custody of persons under sentence for offenses, awaiting trial or sentence for offenses,* under arrest for an offense, a violation of probation, a violation of parole, or a violation of mandatory supervised release, or awaiting a bail setting, hearing or preliminary hearing ***." (Emphasis added.) 720 ILCS 5/31A—1.1(c)(1) (West 1992).

Citing *People ex rel. Gibson v. Cannon* (1976), 65 Ill. 2d 366, 357 N.E.2d 1180, defendant argues that a person on electronic detention

is in constructive custody of, but not committed to, the Department. In *Cannon*, our supreme court held that a parolee was merely in constructive, rather than physical, custody of the Department and that section 5—8—4(f) of the Unified Code of Corrections (Code) did not apply to parolees. (*Cannon*, 65 Ill. 2d at 371, 357 N.E.2d at 1182.) Defendant contends that a person on electronic home detention is likewise in merely constructive custody and not committed to the Department. Defendant misreads *Cannon*. A careful reading of *Cannon* demonstrates that our supreme court held section 5—8—4(f) of the Code inapplicable to parolees not because they were not "committed" to the Department but because they were not "held," a term which the court said "connotes a state or degree of physical restraint" and was inconsistent with the parolee's status as a person released from confinement. (*Cannon*, 65 Ill. 2d at 370, 357 N.E.2d at 1182.) While the court held that a parolee was in constructive, rather than physical, custody, it did not hold that a parolee was not committed to the Department.

Further, the language of the Electronic Home Detention Law (Law) (730 ILCS 5/5—8A—1 *et seq.* (West 1992)) itself demonstrates that defendant was committed to the Department. Section 5—8A—4(H) of the Law provides that a participant therein shall be given notice "that violation of the order for home detention may subject the participant to prosecution for the crime of escape." (730 ILCS 5/5—8A—4(H) (West 1992).) Escape is defined as the "intentional and unauthorized absence of a committed person from the custody of the Department." (730 ILCS 5/3—1—2(i) (West 1992).) Having made persons on electronic detention subject to the offense of escape, it logically follows that the legislature intended such persons to fall within the classification of "committed persons."

Defendant is clearly a committed person, and the statute defines a "committed person" as one who has been judicially placed in the custody of the Department on the basis of delinquency or conviction. As noted above, a penal institution is defined as a place for the custody of parties under sentence for offenses. Defendant was in the custody of the Department, serving a sentence for burglary. The term "place," as used in the definition of a penal institution, denotes a specific physical location with defined boundaries. Defendant's residence clearly qualifies. Defendant points out, however, that the offense was not committed in his residence but in a neighbor's driveway. We nevertheless find that at the time the offense was committed, defendant was in a penal institution.

Section 5—8A—4(A) provides:

"The participant shall remain within the interior premises or

within the property boundaries of his or her residence at all times designated by the supervising authority. Such instances of approved absences from the home may include but are not limited to the following:

(1) working or employment approved by the court or traveling to or from approved employment;

(2) unemployed and seeking employment approved for the participant by the court;

(3) undergoing medical, psychiatric, mental health treatment, counseling, or other treatment programs approved for the participant by the court;

(4) attending an educational institution or a program approved for the participant by the court;

(5) attending a regularly scheduled religious service at a place of worship;

(6) participating in community work release or community service programs approved for the participant by the supervising authority; or

(7) for another compelling reason consistent with the public interest, as approved by the supervising authority." 730 ILCS 5/5—8A—4(A) (West 1992).

Clem Campanella, the electronic detention program supervisor, testified as to how the system worked. A monitor is connected to a telephone in the participant's home. The participant has a transmitter strapped to his ankle which transmits a signal to the monitor. If the transmitter goes too far from the monitor, it can no longer pick up the transmitter's signal. When contact is broken, the monitor automatically alerts the monitoring service that the monitor is off. This restricts the participant to a circular area, the radius of which could vary, depending on the structure of the building, the geography, terrain, electronic equipment in the house, and various other factors. Obviously, there are places where the effective radius of the monitoring system will extend beyond the participant's property boundary and occasions where the participant will be beyond the boundaries of his residence but within the radius of the monitor. Having chosen to utilize this type of system, the State has clearly and necessarily made such occasions instances of approved absences.

We find support for our position in *People v. Simmons* (1981), 88 Ill. 2d 270, 430 N.E.2d 1032, wherein our supreme court considered the scope of the phrase "penal institution" in the context of a prisoner who escaped from a community correctional center. The defendant had been sentenced to the Illinois Department of Corrections for several felonies. After a time in a high-security prison, he was transferred to the Peoria Community Correctional Center, where he

was allowed six hours of independent release. He was taken to a local shopping center and failed to return. He was recaptured in Iowa and subsequently convicted of escape. On appeal, defendant argued, *inter alia,* that the correctional center was not a penal institution because it was not as secure as these facilities specifically mentioned in the definition of penal institution. In holding that the work-release center was a penal institution, our supreme court stated:

"We do not see why the mechanics of confinement have any special significance. The obvious explanation for work-release centers, such as the institution the defendant absconded from, not being expressly mentioned in the definition of 'penal institution' is that when the Criminal Code of 1961 was written, there were no such institutions. It was not until 1967 that the legislature authorized halfway houses and work-release centers. [Citation.] We think the idea of a penal institution is broad enough to encompass new varieties as they are developed. [Citation.] Nor does the temporary release of inmates from the Center detract from its status as a penal institution." (*Simmons*, 88 Ill. 2d at 274, 430 N.E.2d at 1034-35.)

(See also *People v. Marble* (1982), 91 Ill. 2d 242, 437 N.E.2d 641.) We believe that the term "penal institution" is likewise broad enough to encompass the electronic home detention program.

Defendant also asserts that his conviction for unlawful delivery of a controlled substance, a Class 2 felony, must be vacated because it was predicated on the same act as his conviction for possession of contraband in a penal institution, a Class 1 felony. We agree.

Defendant contends that although neither crime constitutes a lesser-included offense of the other, he cannot be convicted of both crimes where they are based on the same physical act. Even where lesser-included offenses are not involved, multiple convictions and concurrent sentences cannot be permitted where more than one offense is carved from the same physical act. (*People v. Roberts* (1994), 263 Ill. App. 3d 348, 354, 636 N.E.2d 86, 91.) The crack cocaine which defendant possessed in a penal institution is the same cocaine which he delivered to the confidential informant. As defendant notes, no other possession or delivery was proven at trial. Although testimony was proffered which would seem to indicate that defendant made another drug sale to a "skinny black guy," the State filed only one charge of unlawful delivery and withdrew its proposed instruction on circumstantial evidence, precluding the jury from considering that testimony in regard to the unlawful delivery count of which defendant was convicted.

The unlawful delivery of a controlled substance count is, as noted,

a Class 2 felony, which carries a lesser penalty than unlawful possession of contraband in a penal institution, a Class 1 felony. The Class 2 delivery of a controlled substance felony cannot be construed to be a lesser-included offense of the possession of contraband felony but can be considered to have been carved from the same physical act, warranting vacation of the conviction.

The "one-act, one-crime rule" is set out in the seminal case of *People v. King* (1977), 66 Ill. 2d 551, 556, 363 N.E.2d 838, 844-45:

> "Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act. Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are by definition, lesser included offenses. Multiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of these acts. 'Act,' when used in this sense, is intended to mean any overt or outward manifestation which will support a different offense." *King*, 66 Ill. 2d at 566, 363 N.E.2d at 844-45.

Factors to be considered in assessing whether conduct constituted separate acts are: (1) the time lapse between successive segments of the defendant's conduct; (2) whether an intervening event occurred; (3) the victim's identity; (4) the similarity of the defendant's acts; (5) the site of the defendant's conduct; and (6) the prosecutorial intent as evinced in the language of the indictment or information. (*People v. Zarate* (1994), 264 Ill. App. 3d 667, 677, 637 N.E.2d 1044, 1051.) Defendant's possession of the contraband in a penal institution was based on his act of having the crack cocaine in his possession as he stood outside of his house with the informant. His act of delivering that same cocaine to the confidential informant took place at that same time and location, and no intervening event occurred. Because the contraband possessed under the second count is the same cocaine delivered under the first count, multiple convictions and concurrent sentences cannot be permitted in this case.

Where multiple judgments have been entered on a single act, the proper procedure is to vacate the superfluous judgment. (*People v. Williams* (1994), 265 Ill. App. 3d 283, 291, 638 N.E.2d 345, 351.) Accordingly, we vacate the unlawful delivery of a controlled substance conviction and remand this cause with directions that the circuit court correct the mittimus to reflect only a conviction for possession of contraband in a penal institution and vacate the other conviction.

Affirmed in part; vacated in part, and remanded with directions.

MAAG, P.J., and GOLDENHERSH, J., concur.