NO. 4-96-0813

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,    )   Appeal from

Plaintiff-Appellee,           )   Circuit Court of

v.                            )   Champaign County

DONALD LAMAR WASHINGTON,                )   No. 96CF420

Defendant-Appellant.          )

                                        )   Honorable

                                        )   John R. DeLaMar,

                                        )   Judge Presiding.

_________________________________________________________________

JUSTICE KNECHT delivered the opinion of the court:

De­fendant Donald Lamar Washington was convicted of resi­dential burglary (720 ILCS 5/19-3 (West 1996)) after a jury trial in the circuit court of Cham­paign Coun­ty.  At the time the of­fense was committed, defendant was serving a sentence of manda­tory super­vised release for an unlawful use of weapons by a felon conviction (weapons offense).  The trial court sen­tenced de­fen­dant to 15 years' im­pris­on­ment, to be served con­secu­tively to the sen­tence for the weapons of­fense.  Defen­dant ap­peals, argu­ing (1) the State failed to prove him guilty beyond a rea­sonable doubt; (2) the trial court ordered reim­burse­ment for appoint­ed counsel's fees prior to any representation and without a hearing; and (3) the trial court sen­tenced de­fen­dant under the mistaken belief the resi­den­tial bur­glary sen­tence must be served con­secu­tive­ly to the prior sen­tence.  We af­firm in part as modified and vacate the recoupment order and remand for a reimbursement hearing.

I.  BACKGROUND

In case No. 94-CF-811, defendant was convicted of the weap­ons offense and sentenced to four years' imprisonment.  On Febru­ary 9, 1996, de­fen­dant was re­leased from prison and began serving a one-year term of manda­tory super­vised release.  In March 1996, defendant was charged with residential burglary.  

At tri­al, Rochella Coo­per tes­ti­fied she locked her tri-level house as she left at ap­prox­i­mate­ly 5 p.m. on March 23, 1996.  As she drove away, she passed a man wear­ing a black ski mask and a black jack­et with red and white let­tering.  The man waved at her.  Coo­per re­turned home at ap­proxi­mately 5:30 p.m.  She placed a key into the lock, but the door opened easily with­out the key.  Coo­per en­tered her house, walked past the stair­way, and no­ticed her bed­room light was on.  She turned off that light and a person then ran across her bed­room.  Cooper asked him to iden­tify him­self.  The intruder re­sponded, "I'm in your house.  Some­one broke in.  I'm looking for them [
sic
]."  

The man was at the top of the stairs, she was at the bot­tom.  Defendant walked toward the stairs and Cooper "[got] a good look" at defendant's face.  De­fen­dant then ran down the stairs.  Coo­per ran out the front door, which was about four feet from where she had been standing.  Defendant exited the back door and jumped over Cooper's fence.  As he left, defen­dant dropped Cooper's por­table tele­phone, which she had left on her night stand.  

Cooper described the intruder as Afri­can-Amer­ican, wearing black jeans and a black jacket, the same clothes she saw on the man who waved at her.  The intruder was approximately 6 feet tall, was thin, and had a dark com­plex­ion.  Coo­per iden­ti­fied defendant as intruder.  She did not doubt her identi­fica­tion of him.  De­fen­dant was not wear­ing the ski mask when she saw him in the house.  

After Cooper called the police, she surveyed her home.  The dresser drawers in her bedroom were empty, and the drawers were on her dresser.  Noth­ing was missing from them.  The rear panel of the cabinet for her videocassette recorder (VCR) had been re­moved.  The VCR was found on a couch one floor above the room where the VCR had been.  A re­mote con­trol that had been next to the VCR was miss­ing.  

Cooper owned the VCR for three years.  Her husband purchased it and brought it home.  She was present when he opened the new box and set up the VCR.  The VCR had not been loaned to anyone or been taken to be repaired.  

A police officer asked Cooper to examine photographs.  She did not identify anyone in those photographs.  She stated an individ­ual looked similar, but he had a wider nose than the indi­vidual in her house and his face was thinner.  Defendant's pic­ture was not in the photograph display. 

On cross-examination, Cooper testified she did not view a lineup or hear a voice line­up.  She did not recall if the in­truder wore gloves.  A light was on when Cooper entered her house.  The sun was not out, but "it was light outside."  Cooper saw defendant probably less than one minute.  Cooper knew the State would have someone it believed to be the intruder at tri­al.  She did not know if the VCR was a dis­play model.    

On redirect examination, Cooper said she identified de­fen­dant because he was the person she ob­served in her house, not because he was the only African-American male in the court­room.  

James B. Clark, a police officer for Champaign, testi­fied he interviewed Cooper at her residence.  Officer Clark ob­served the front door had been forced open.  He searched the entertainment center, the VCR, and the cellular phone for finger­prints.  Officer Clark found latent fingerprints on the VCR and on a glass door to the entertain­ment center.

John Bunting, a forensic scientist with the Illinois State Police Crime Lab, testified the latent fingerprint found on the bottom of the VCR was made by defendant.  On cross-examina­tion, Bunting testified there was no way of determining the age of the fingerprint.  

Donald Shelton, an investigator for the Champaign po­lice department, testified he contacted Cooper after he received the information on the fingerprints from the Illinois State Po­lice Crime Lab.  Investigator Shelton informed Cooper the person iden­tified by the fingerprint analysis was in custody.  Based on this evidence, a jury found defendant guilty.  

II.  REASONABLE DOUBT

Defendant argues he was not proved guilty be­yond a reasonable doubt for two reasons.  First, defendant main­tains Cooper's identification of him was neither positive nor credible, and a conviction based on her unreliable identification cannot be sustained.  Second, defendant contends his fingerprints were not alone sufficient to support a guilty verdict.  

Absent a determination the evi­dence is so im­proba­ble or un­satis­fac­to­ry it creates rea­sonable doubt as to defendant's guilt, this court will not overturn a criminal conviction.  
Peo­ple v. Col­lins
, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276 (1985).  When considering a challenge to the sufficiency of the evi­dence, we view the evidence in the light most favorable to the prosecu­tion and will affirm the trial court's decision if any rational fact find­er could have found the necessary elements of the of­fense beyond a reasonable doubt.  
Collins
, 106 Ill. 2d at 261, 478 N.E.2d at 277.  The offense of residential bur­glary is com­mit­ted when one "know­ingly and without authority enters the dwell­ing place of another with the intent to commit therein a felony or theft."  720 ILCS 5/19-3(a) (West 1996).    

Defendant contends we should over­rule the con­vic­tion be­cause Cooper's testi­mony was unre­liable (see 
People v. Dowaliby
, 221 Ill. App. 3d 788, 800, 582 N.E.2d 1243, 1250-51 (1991)) or
 be­cause the fin­ger­prints were not in "the immediate vicinity of the crime under such circum­stanc­es as to establish beyond a rea­son­able doubt that the fin­ger­prints were impressed at the time" of the crime (see 
Peo­ple v. Rhodes
, 85 Ill. 2d 241, 249, 422 N.E.2d 605, 608 (1981)).  These cases do not man­date a con­trary re­sult.  In 
Dowaliby
, the witness' identi­fication was vague.  The witness did not identify the defendant in court and was unable to provide a general de­scription, includ­ing defendant's age and race.  
Dowaliby
, 221 Ill. App. 3d at 800, 582 N.E.2d at 1250-51.  Here Coo­per pro­vided a de­scrip­tion of the in­trud­er and identi­fied defen­dant in court.

Defendant's reliance on 
Rhodes
 is also misplaced.  Defendant cites 
Rhodes
 as the standard when a conviction is based on fin­ger­prints alone.  Here, there is not only a fingerprint of defen­dant on a VCR that had been moved during the burglary, but also an identification of defendant.  Given Cooper's testimo­ny and defendant's fingerprint at the scene, we find a ra­tio­nal jury could have found be­yond a reason­able doubt de­fen­dant en­tered Cooper's home without per­mis­sion and with the intent to commit a theft therein.  

III.  RECOUPMENT ORDER

Defendant next argues the recoupment order should be va­cated because the trial court failed to hold the statutorily mandated hear­ing and because the order was entered before any services were rendered by counsel.  The State maintains defendant waived this argument because the record does not contain relevant tran­scripts and because defendant failed to raise the issue in the trial court.  

In 
People v. Love
, 177 Ill. 2d 550, 563, 687 N.E.2d 32, 38 (1997), the Su­preme Court of Illi­nois held section 113-3.1 of the Code of Criminal Procedure of 1963 re­quires a trial court to hold a hear­ing on the defendant's fi­nan­cial re­sourc­es before ordering reim­burse­ment of attorney fees.  See 725 ILCS 5/113-3.1 (West 1996).

 The record in this case does not demonstrate the trial court held a hear­ing in compliance with 
Love
 and section 113-3.1.  The re­cord includes defendant's affi­davit for court-ap­pointed coun­sel, an order for payment with the amount inserted and a pre-printed state­ment "[t]he pay­ment(s) are based on your present financial cir­cum­stances," an arraign­ment checklist with a pre-printed line indi­cating the reimburse­ment amount ordered "($300/$150)," and a brief docket entry re­flect­ing defendant's arraignment.  The affi­davit, the recoup­ment order, and the dock­et entry are dated April 5, 1996.  The portion of the docket entry relat­ing to reim­bursement follows:

"[Defendant] arraigned.  Motion by [de­fendant] for court-appointed counsel.  Mo­tion is al­lowed.  ***  Attor­ney, [public defender] is ap­point­ed to repre­sent [defendant].  Cause is con­tin­ued for ap­pearance of counsel to 4-11-96 at 1:30 p.m. in J.

***  Bond set at $10,000.  Payment Order For Court-Appointed Attorney entered.  SEE ORDER.  H. Welch appears on bond only."

The record suggests the order of reimburse­ment was noth­ing more than a perfunctory exercise by the court.  Be­cause the scant re­cord fails to re­veal a hear­ing in ac­cor­dance with 
Love
, the order is va­cated.  See 
People v. Atwood
, 193 Ill. App. 3d 580, 592, 549 N.E.2d 1362, 1369 (1990) ("a bur­den is placed upon the court and the prosecu­tor to see that a proper record is made to support the reimburse­ment or­der"); 
Peo­ple v. Ter­ry
, 170 Ill. App. 3d 484, 489, 524 N.E.2d 685, 689 (1988) ("[i]t is es­sen­tial the trial court create a complete record"); see also 
Peo­ple v. Nash
, 183 Ill. App. 3d 924, 933, 539 N.E.2d 822, 827 (1989). 

The State's waiver argument, based on defendant's fail­ure to raise the issue in the trial court, fails.  We find the cir­cum­stances similar to those in 
Love
, in which the court found the issue re­gard­ing the absence of a reim­burse­ment hearing was not waived where the trial court "whol­ly ignored the statuto­ry proce­dures mandat­ed" by sec­tion 113-3.1.  
Love
, 177 Ill. 2d at 564, 687 N.E.2d at 39.  

Because we vacate the trial court's order for reim­burse­ment and remand for proceedings consistent with 
Love
, we need not address defendant's arguments regarding the timeliness of the recoupment order.

IV.  SENTENCING

Defendant maintains the trial court erred in sentencing defendant to a term of imprisonment consecutive to the time re­maining in No. 94-CF-811.  Defendant contends the trial court mis­tak­en­ly be­lieved the consecutive sentence was mandated by section 5-8-4(f) of the Unified Code of Corrections (730 ILCS 5-8-4(f) (West 1996)).  De­fen­dant cites 
Peo­ple v. Hausman
, 287 Ill. App. 3d 1069, 1071-72, 679 N.E.2d 867, 869 (1997), and ar­gues the plain error ex­cep­tion to the waiver rule should apply.  The State main­tains defen­dant waived this argu­ment by not only failing to raise the issue in a posttrial mo­tion, but also agreeing the consecu­tive sentence was mandatory.

The following discussion occurred at the sentencing hearing:  

"THE COURT:  *** [T]he sentence imposed in this case must be served consecutively to any unexpired portion of the sentence remain­ing in [No.] 94-CF-[8]11.  Wouldn't that be a man­datory consecutive?

***

DEFENSE COUNSEL:  Judge, I agree with the Court's assessment  ***.

THE COURT:  ***  Well, let me make this ex­press for the record, too, in case it should come up later.

I would not be imposing a consecutive sentence.  I would not make this necessary statutory finding that, in my estimation, it's necessary for the protection of the public that the 15-year sentence agreed to and to be imposed upon [defendant] in this case must be served consecutively to any unexpired portion of the sentence in [No.] 94-CF-[8]11. 

I believe that the 15 years is a fair and reasonable sentence and is adequate.

Notwithstanding that, I believe that under the provisions of [s]ection 5-8-4, [s]ubsection F, because [defendant] was tech­nically committed to the [DOC] at the time of this offense, he must serve any sentence imposed herein consecutively to the unexpired portion of the sentence in [No.] 94-CF-[8]11.

***

In the event I'm in error and the [DOC] feels he can serve this concurrently, that would be fine."

The trial court sentenced defendant to a con­sec­utive term based upon its interpretation of section 5-8-4(f).  See 730 ILCS 5/5-8-4(f) (West 1996).  In 
People ex rel. Gibson v. Can­non
, 65 Ill. 2d 366, 370-71, 357 N.E.2d 1180, 1182 (1976), the Su­preme Court of Illi­nois held sec­tion 5-8-4(f) did not apply to individ­uals on parole because parolees were not "held" by the DOC.  Consecutive sentences are not mandated in these cir­cum­stanc­es.  Defendant's sentence resulted from the trial court's misin­terpre­tation of the law.

The State maintains regardless of the trial court's misinterpretation, de­fen­dant waived the error.  See 
People v. Burt
, 168 Ill. 2d 49, 69, 658 N.E.2d 375, 385 (1995) (noting when a de­fen­dant fails to object at the sen­tencing hear­ing or raise the issue in his mo­tion to re­con­sid­er, the issue is waived on appeal).  The State relies on 
Peo­ple v. Moore
, 289 Ill. App. 3d 357, 363, 681 N.E.2d 1089, 1093 (1997), and 
People v. Gwartney
, 289 Ill. App. 3d 350, 356-57, 683 N.E.2d 497, 501 (1997), in which this court 
held the miscalcula­tion of sen­tence credit was waived on appeal when de­fense coun­sel explicitly agreed to an in­cor­rect cal­cu­la­tion.

Recent supreme court supervisory orders, however, va­cated our decisions in both 
Moore
 and 
Gwartney
 in relevant part and re­mand­ed for the provi­sion of sen­tence cred­it.  
People v. Moore
, 175 Ill. 2d 545, 688 N.E.2d 308 (1997) (nonprecedential su­preme court super­visory or­der); 
People v. Gwartney
, 175 Ill. 2d 539, 688 N.E.2d 308 (1997) (nonprecedential su­preme court super­viso­ry or­der).  We find the mere fact a de­fen­dant affir­ma­tive­ly agrees with the trial court on an issue such as the one before us does not render an issue unre­view­able.

This court may address an otherwise waived issue under the plain error exception to the waiver rule in the following cir­cum­stanc­es: (1) when the evi­dence is closely bal­anced or (2) when an error is so fun­damen­tal a defen­dant may have been de­prived of a fair sen­tenc­ing hear­ing.  
People v. Beals
, 162 Ill. 2d 497, 511, 643 N.E.2d 789, 796 (1994).  The trial court's erro­neous interpretation of the law caused de­fen­dant to receive a con­sec­utive sentence rather than a concurrent one.  The re­straint on his liberty was thus greater than that required by law.  This in­creased re­straint falls within the sec­ond prong of the plain error rule.

Su­preme Court Rule 615(b)(4) (134 Ill. 2d R. 615(b)(4)) gives authority to courts of review to make nec­es­sary modi­fi­ca­tions to trial court or­ders.  This court may invoke Rule 615(b)(4) to modify an order when a trial court imposes an un­lawful sentence.  
Peo­ple v. Jones
, 168 Ill. 2d 367, 377-78, 659 N.E.2d 1306, 1310 (1995).  The trial court expressed it would not have imposed a consec­utive sen­tence absent its belief one was mandated and it would agree with a concurrent term if its inter­pretation of sec­tion 5-8-4(f) was wrong.  We invoke our authori­ty under Rule 615(b)(4) to modi­fy defendant's sen­tence to a 15-year im­pris­on­ment sen­tence to be served 
concur­rent­ly
 with any sentence imposed in case No. 94-CF-811.  

V.  CONCLUSION

For the foregoing reasons, we affirm defendant's con­viction, vacate the order of recoupment and remand for pro­ceed­ings pursuant to 
Love
, and modi­fy defendant's sentence.

Affirmed in part as modified, vacated in part and re­manded with directions.

COOK and STEIGMANN, JJ., concur.