2016 IL App (1st) 133401

FOURTH DIVISION
June 30, 2016

No. 1-13-3401

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 4254 |
| | ) | |
| LASHAUN LASHLEY, | ) | Honorable |
| | ) | Maura Slattery Boyle, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE ELLIS delivered the judgment of the court, with opinion.
Justices Howse and Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1     After a bench trial, defendant Lashaun Lashley was convicted of one count of Class 1 possession of between 15 and 100 grams of heroin and two counts of Class 4 possession of less than 15 grams of heroin. At the time defendant committed these offenses, he was serving a sentence of Cook County impact incarceration (*i.e.*, boot camp) for his convictions in circuit court case Nos. 08 CR 1513801 and 11 CR 0497201. See 730 ILCS 5/5-8-1.2 (West 2012) (outlining county impact incarceration program). In this case, the trial court sentenced defendant to three concurrent terms of four years' imprisonment to be served consecutively to the sentences imposed in case Nos. 08 CR 1513801 and 11 CR 0497201.

¶ 2     On appeal, defendant contends that the State failed to prove beyond a reasonable doubt that he possessed at least 15 grams of heroin, and, therefore, this court should reduce his Class 1 conviction to Class 4 possession, *i.e.*, possession of less than 15 grams of heroin. He further contends that his sentences should run concurrently with the sentences imposed in the two prior cases and that the trial court improperly entered extended term sentences on his two Class 4 heroin possession offenses.

¶ 3     We affirm defendant's conviction because the State presented sufficient evidence—via a forensic chemist's stipulated testimony—that the heroin seized from defendant weighed 15.2 grams. We are not persuaded by defendant's argument that, even viewing that testimony in the light most favorable to the State, the forensic chemist included the weight of several plastic bags in his calculation.

¶ 4     But we agree with defendant's arguments regarding his sentencing. Although the trial court did not expressly say why it imposed consecutive sentences, none of the provisions of section 5-8-4 of the Unified Code of Corrections (730 ILCS 5/5-8-4 (West 2012)) applied to defendant. We reject the State's argument that section 5-8-4(d)(6) of the Unified Code of Corrections (730 ILCS 5/5-8-4(d)(6) (West 2012)) authorized defendant's sentence, where the applicability of that provision is ambiguous with respect to defendant, who was on monitored release from a sentence of county impact incarceration at the time of his arrest in this case. Because of that ambiguity, we adopt a reading of section 5-8-4(d)(6) that favors defendant. We also agree that the trial court erred in imposing an extended-term sentence on defendant's Class 4 felonies for possessing less than 15 grams of heroin.

¶ 5                                    I. BACKGROUND

¶ 6     The State charged defendant with possession of 15 to 100 grams of heroin with intent to deliver, possession of less than 15 grams of heroin with intent to deliver within 1000 feet of a public park, possession of a controlled substance with intent to deliver within 1000 feet of a school, aggravated battery, and resisting a police officer.

¶ 7     At trial, Chicago police officer John Lipka testified that, shortly after noon on January 30, 2012, he was conducting narcotics surveillance on the 100 block of North Karlov Avenue in Chicago. From 200 feet away and using binoculars, he observed defendant and Darrien Forrest

standing in front of 122 North Karlov Avenue. Lipka described three transactions that he observed between Forrest and unknown individuals. Vehicles would pull up to the curb and stop. Forrest would approach the vehicles and speak to the drivers. He would then walk into the gangway on the north side of the building at 122 North Karlov Avenue, bend over, retrieve an object, and hand it to the motorist, who would then leave.

¶ 8    Officer Lipka also testified that he observed defendant walk up to a vehicle and talk to the motorist, who handed him money. Defendant then walked over to the gangway at 122 North Karlov Avenue, bent over, picked up an object from the ground, and handed it to the driver. The officer observed defendant retrieve the object from the same area he had seen Forrest go to on the three prior occasions. Officer Lipka believed that he had witnessed multiple illegal narcotics transactions.

¶ 9    Officer Lipka then broke his surveillance, and he and his partner, Officer Edward Heidewald, drove to 122 North Karlov Avenue in an unmarked vehicle. They were in plain clothes and wearing their stars and belts. As they approached, they saw a woman hand defendant money. Defendant looked in the officers' direction and immediately began to walk south on Karlov Avenue. The officers exited their car and approached defendant for a field interview. Heidewald saw purple plastic bags in defendant's mouth and asked him to spit them out; defendant refused. As Heidewald attempted to handcuff defendant, defendant fled. Officer Lipka grabbed defendant, who pulled him, and a struggle ensued. Lipka knocked defendant's feet out from under him, and he and the officers fell to the ground, injuring Lipka's hands. Lipka later learned that he had fractured his right middle finger.

¶ 10   After gaining control of defendant, Officer Heidewald again asked defendant to spit out the objects in his mouth. Defendant spit out 10 purple plastic bags containing a white powder substance, which the officers suspected to be heroin.

¶ 11   Officer Lipka directed Officer Alan Rogers to the gangway where Rogers retrieved a clear plastic bag containing five knotted bags, inside of which were multiple Ziploc bags containing suspected heroin. In total, Rogers recovered 83 small bags. Both Heidewald and Lipka identified defendant in court.

¶ 12   The items recovered from the gangway were inventoried under No. 12525847, and those recovered from defendant's mouth were inventoried under No. 12525853. The parties stipulated that forensic chemist Peter Anzalone performed tests for ascertaining the presence of a controlled substance on the recovered items. The parties stipulated that Anzalone would testify:

"[t]hat after performing the tests on the contents of 65 of the 83 items recovered in Inventory 12525847, the chemist's expert opinion within a reasonable degree of scientific certainty is that the contents of the tested items were positive for the presence of heroin. That actual weight of those items was 15.2 grams.

That the chemist would further testify that the total estimated weight of the 83 items would be 19.4 grams."

The stipulation also stated that Anzalone would testify that the items recovered from defendant's mouth tested positive for the presence of heroin and "the actual weight of those items was 3.9 grams."

¶ 13   The parties also stipulated that the doctor who treated Officer Lipka's hand would testify that, based on the amount of swelling and tenderness in the officer's fingers, Lipka had a

nondisplaced fracture. The doctor gave Lipka a removable splint and prescribed physical therapy.

¶ 14     The trial court found defendant guilty of three lesser-included offenses of the charged offenses: one count of possession of 15 to 100 grams of heroin (720 ILCS 570/402(a)(1)(A) (West 2012)) and two counts of possession of less than 15 grams of heroin (720 ILCS 570/402(c) (West 2012)). The court also found defendant guilty of resisting a police officer (720 ILCS 5/31-1(a-7) (West 2012)), but not guilty of aggravated battery. The trial court denied defendant's motion for a new trial.

¶ 15     At sentencing, the State asked the court to impose an extended-term sentence on each of the possession counts. The court sentenced defendant to concurrent, extended terms of four years' imprisonment on the three possession convictions, followed by two years of mandatory supervised release (MSR). The court ordered the sentences to be served consecutively to the sentences imposed in two prior cases (case Nos. 08 CR 1513801, 11 CR 0497201) in which defendant was sentenced to two periods of county impact incarceration.[1] No sentence was entered on the conviction for resisting a police officer.

¶ 16     Defendant appeals.

¶ 17                                         II. ANALYSIS

¶ 18                          A. Sufficiency of Evidence of Weight

¶ 19     Defendant first argues that the State failed to prove beyond a reasonable doubt that he was in possession of 15 to 100 grams of heroin. The State responds that the parties stipulated to

---

[1]Defendant was sentenced to county impact incarceration in case No. 11 CR 0497201 on May 11, 2011. In case No. 08 CR 1513801 defendant was initially sentenced to two years' probation. He violated probation, was sentenced to 60 days' imprisonment, a warrant was issued, and defendant was arrested and ultimately sentenced on May 11, 2011, to boot camp in case No. 08 CR 1513801, to run concurrent with the county impact incarceration sentence in case No. 11 CR 0497201.

the laboratory results that the recovered heroin in question weighed over 15 grams, and defendant, therefore, waived his right to appeal this issue.

¶ 20    The State cites *People v. Woods*, 214 Ill. 2d 455 (2005), and *People v. Bush*, 214 Ill. 2d 318 (2005), in support of its argument that defendant waived his challenge to the sufficiency of the evidence of the weight of the heroin. In *Woods*, the defendant stipulated to the weight and results of chemical testing on narcotics that the defendant had been charged with possessing. *Woods*, 214 Ill. 2d at 461. On appeal, the defendant alleged that the State had failed to prove the chain of custody for the narcotics, rendering the narcotics evidence inadmissible. *Id.* at 465. The supreme court noted that a defendant "may waive the necessity of proof of chain of custody by entering into a stipulation with respect to the evidence." *Id.* at 468. The court also "reject[ed] the notion that a challenge to the State's chain of custody is a question of the sufficiency of the evidence." *Id.* at 471. Instead, because "[a] chain of custody is used to lay a proper foundation for the admission of evidence," the court found that "a challenge to the chain of custody is an evidentiary issue that is generally subject to waiver on review if not preserved by defendant's making a specific objection at trial and including this specific claim in his or her posttrial motion." *Id.* Thus, the court concluded both that the defendant had forfeited his chain-of-custody challenge by failing to object at trial and that he had "affirmatively waived" his challenge by entering into the stipulation and signaling that "there was no dispute involving the admissibility of the narcotics evidence." *Id.* at 475.

¶ 21    Similarly, in *Bush*, the court held that the defendant had affirmatively waived his challenge to the foundation for an expert opinion that a certain substance contained cocaine where the defendant had stipulated to the expert's testimony. *Bush*, 214 Ill. 2d. at 333. By

stipulating that the expert's opinion was admissible, the defendant "waived the necessity of proving the requisite foundation for that opinion." *Id.*

¶ 22    We do not find either *Woods* or *Bush* to be applicable here. Defendant does not challenge the admissibility of the stipulated testimony on the basis that it lacked a proper foundation. Instead, he claims that the State failed to prove that he possessed more than 15 grams of heroin, and that he could only have been convicted of the lesser offense of possessing less than 15 grams of heroin. When the State charges a defendant with possessing a certain amount of drugs, and the defendant may be found guilty of lesser-included offenses involving smaller quantities of drugs, the weight of the drugs recovered from the defendant is an essential element of the charges that the State must prove beyond a reasonable doubt. *People v. Jones*, 174 Ill. 2d 427, 428-29 (1996). And it is well established that "when a defendant makes a challenge to the sufficiency of the evidence, his or her claim is not subject to the waiver rule and may be raised for the first time on direct appeal." *Woods*, 214 Ill. 2d at 470.

¶ 23    Defendant did not stipulate to the conclusion that the State had proved the element of the weight of the drugs beyond a reasonable doubt. Instead, he stipulated that Anzalone would testify that the contents of 65 of the 83 bags tested positive for heroin and weighed 15.2 grams. Whether that evidence was sufficient to prove that the heroin weighed more than 15 grams—an essential element of the State's case—is not an issue that defendant was required to raise below. We reject the State's claim that defendant waived review of this issue.

¶ 24    Turning to the merits of defendant's sufficiency-of-the-evidence argument, defendant contends that the State failed to prove beyond a reasonable doubt that he possessed between 15 and 100 grams of heroin because the stipulation regarding the weight of the heroin indicated that the forensic chemist weighed the heroin along with the plastic bags in which the heroin was

packaged. According to defendant, the plastic bags likely weighed more than 0.2 grams, so the fact that the heroin and the bags weighed 15.2 grams together does not establish that the heroin weighed at least 15 grams.

¶ 25    The parties stipulated that the forensic chemist would testify that he received inventory No. 12525847, which contained "83 plastic bags with powder substance and six empty plastic bags." They also stipulated:

> "That after performing the tests on the contents of 65 of the 83 items recovered in Inventory 12525847, the chemist's expert opinion within a reasonable degree of scientific certainty is that the contents of the tested items were positive for the presence of heroin. That [the] actual weight of those items was 15.2 grams."

Defendant claims that the word "items" in the final sentence refers to the 65 "items" taken from inventory No. 12525847, which included both heroin and plastic bags.

¶ 26    In assessing the sufficiency of the evidence, we determine whether a rational trier of fact, viewing the evidence in the light most favorable to the State, could have found the essential elements of the crime beyond a reasonable doubt. *People v. Ross*, 229 Ill. 2d 255, 272 (2008). We will not substitute our judgment for that of the trier of fact with regard to the credibility of witnesses, the weight to be given to each witness's testimony, or the reasonable inferences to be drawn from the evidence. *Id.* A defendant's conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt as to his guilt. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 225 (2009).

¶ 27    As we noted above, when a defendant is charged with possessing a specific amount of drugs and there is an available lesser-included offense of possessing a smaller amount, the weight of the drugs is an essential element that the State must prove beyond a reasonable doubt.

*Jones*, 174 Ill. 2d at 428-29. When the samples of the drug are not sufficiently homogenous—such as packets containing powder—"a portion from each container or sample must be tested in order to determine the contents of each container or sample." *Id.* at 429. The State cannot rely on an inference that the untested samples also contain the drug unless they are actually tested. *Id.* at 430.

¶ 28    Viewing the evidence in the light most favorable to the State, we hold that it presented sufficient evidence to prove that defendant possessed between 15 and 100 grams of heroin. While the stipulation does refer to the "items" in inventory No. 12525847 as both the powder and the plastic bags, it is not entirely clear that the chemist weighed both the powder and the bags, or subtracted the weight of the bags from the overall weight of the 65 tested items. Nor can we be certain what the weight of the bags was, or that they weighed more than 0.2 grams. It is more likely that the weight of the bags did not factor into the chemist's calculation, considering that he was weighing the drugs for the express purpose of preparing evidence for the State's prosecution and weighed just enough of the drugs (15.2 grams) to provide the State with enough evidence to prosecute defendant for possessing between 15 and 100 grams of heroin.

¶ 29    In any event, defendant was free to cross-examine the expert on these points but did not do so. Had defendant raised such challenges at trial, the State would have had the opportunity to respond. But defendant did not, and thus the State provided no further evidence on this point. Taking the evidence in the light most favorable to the State and with no contrary evidence put forth by defendant, we find that the State presented sufficient evidence to prove that defendant possessed more than 15 grams of heroin.

¶ 30                                    B. Consecutive Sentencing

¶ 31　Defendant next contends that the trial court erred in ordering that his sentences in this case run consecutively with his sentences in case Nos. 08 CR 1513801 and 11 CR 0497201, which he was serving at the time he committed the instant offense.

¶ 32　Before reaching the merits of defendant's argument, we must address two procedural bars raised by the State: (1) that this issue is moot; and (2) that defendant has forfeited review of this issue by failing to raise it below. We turn first to the mootness argument, then to forfeiture.

¶ 33　An issue is moot if no actual controversy exists or where events occur which make it impossible for the court to grant effectual relief. *Dixon v. Chicago & North Western Transportation Co.*, 151 Ill. 2d 108, 116 (1992).

¶ 34　The State contends that this issue is moot because defendant is no longer incarcerated. We disagree. Defendant is currently serving a two-year term of MSR, which is part of defendant's sentence. 730 ILCS 5/5-8-1(d) (West 2012). The Department of Corrections retains custody of all individuals on MSR, and those individuals may be taken into custody for violation of the conditions of their release. 730 ILCS 5/3-14-2(a), (c) (West 2012). Since defendant has not served his entire sentence and is still subject to being confined as a result of his conviction, the issue is not moot. See, *e.g.*, *People v. Younger*, 112 Ill. 2d 422, 426-27 (1986) (issue regarding length of defendant's prison sentence not moot even though he had completed prison term and was on MSR).

¶ 35　With respect to forfeiture, defendant acknowledges that he did not raise this issue below. But he argues that this issue amounts to plain error exempt from forfeiture. The first step in determining whether an error is plain error is to determine whether an error occurred at all. *People v. Sargent*, 239 Ill. 2d 166, 189 (2010). Thus, we turn to the merits of defendant's argument.

¶ 36    At the outset, we note that the trial court did not expressly state which provision of the consecutive-sentencing statute applied to defendant. Defendant argues that none of the provisions of section 5-8-4 of the Unified Code of Corrections (730 ILCS 5/5-8-4 (West 2012)), which spells out the circumstances in which a defendant may be sentenced to consecutive terms of imprisonment, applied to him. Because none of the provisions of section 5-8-4 applied to him, defendant argues, we should order that his sentences be imposed concurrently. See 730 ILCS 5/5-8-4(a) (West 2012) (multiple sentences "shall run concurrently unless otherwise determined by the Illinois court under this Section").

¶ 37    The State responds that it was likely that the trial court applied section 5-8-4(d)(6) of the Unified Code of Corrections (730 ILCS 5/5-8-4(d)(6) (West 2012)), which states, in relevant part:

> "If the defendant was in the custody of the Department of Corrections at the time of the commission of the offense, the sentence shall be served consecutive to the sentence under which the defendant is held by the Department of Corrections." 730 ILCS 5/5-8-4(d)(6) (West 2012).

The State points out that defendant was serving his sentence for case Nos. 08 CR 1513801 and 11 CR 0497201 at the time that he was arrested in this case, and argues that consecutive sentencing was thus required.

¶ 38    Defendant contends that section 5-8-4(d)(6) was also inapplicable because he was not "in the custody of the Department of Corrections at the time of the commission of the offense." *Id.* Rather, defendant argues, he was in the custody of Cook County corrections officers, not the Illinois Department of Corrections.

¶ 39 It is undisputed that, on May 11, 2011, defendant was sentenced to Cook County's impact incarceration program (also known as boot camp). See 730 ILCS 5/5-8-1.2 (West 2012) (outlining impact incarceration program for Cook County). County impact incarceration provides an alternative punishment for "certain non-violent offenders." 730 ILCS 5/5-8-1.2(a) (West 2012). Defendants placed in county impact incarceration must participate in the program for 120 to 180 days, followed by a "mandatory term of monitored release for at least 8 months and no more than 12 months." 730 ILCS 5/5-8-1.2(f) (West 2012). Because defendant was sentenced to county impact incarceration on May 11, 2011, he had completed the program and was likely on monitored release at the time he committed the instant offense on January 30, 2012.

¶ 40 Thus, the question in this case is whether, under section 5-8-4(d)(6), defendant was required to serve his sentence in this case consecutively with the sentence imposed on May 11, 2011. This is a question of statutory construction that we review *de novo*. *People v. Giraud*, 2012 IL 113116, ¶ 6.

¶ 41 When interpreting the language of a statute, our primary goal is to ascertain and give effect to the legislative intent. *Id.* The best indicator of that intent is the language of the statute, given its plain and ordinary meaning. *Id.* Where the language of the statute is clear and unambiguous, we must apply it as written, without relying on extrinsic aids to statutory construction. *Id.* If the language is ambiguous, we construe the statute so that no part of it is rendered meaningless or superfluous. *Id.* "Pursuant to the rule of lenity, ambiguous criminal statutes will generally be construed in the defendant's favor." *People v. Gutman*, 2011 IL 110338, ¶ 12.

¶ 42 We reject the State's argument because, with respect to its application to defendants on monitored release from county impact incarceration, section 5-8-4(d)(6) is ambiguous for two

independent reasons: (1) it is reasonable that "the Department of Corrections" refers only to the Illinois Department of Corrections and not also the county officials responsible for administering the county impact incarceration program; and (2) even if "the Department of Corrections" referred to county officials and facilities it is reasonable to read section 5-8-4(d)(6) as excluding an individual on monitored release because such a person is not "held" by that facility or agency (730 ILCS 5/5-8-4(d)(6) (West 2012)). In light of these ambiguities, we adopt the interpretation of section 5-8-4(d)(6) that favors defendant.

¶ 43                              1. "The Department of Corrections"

¶ 44    Defendant argues that section 5-8-4(d)(6) does not apply to offenders in the county impact incarceration program. Defendant claims that the use of the phrase "in the custody of the Department of Corrections" in section 5-8-4(d)(6) refers to the Illinois Department of Corrections, not the county sheriff, who is tasked with administering the county impact incarceration program. We agree.

¶ 45    We begin by noting that the responsibility for establishing and administering the county impact incarceration program falls on county officials, not the Illinois Department of Corrections. Section 5-8-1.2 of the Unified Code of Corrections (730 ILCS 5/5-8-1.2 (West 2012)), which outlines the county impact incarceration program, states, "Under the direction of the Sheriff and with the approval of the County Board of Commissioners, the Sheriff, in any county with more than 3,000,000 inhabitants, may establish and operate a county impact incarceration program for eligible offenders." 730 ILCS 5/5-8-1.2(b) (West 2012). The sheriff is tasked with "monitoring all offenders" in the program, including those on monitored release. *Id.* If the offender fails to complete the program or the monitored release period, the sheriff is

required to notify the State's Attorney and file a petition for violation in circuit court. 730 ILCS 5/5-8-1.2(h) (West 2012).

¶ 46    Notably, section 5-8-1.2 uses the phrase "Illinois Department of Corrections" when referring to that institution. See 730 ILCS 5/5-8-1.2(b) (West 2012) ("Offenders assigned to the county impact incarceration program under an intergovernmental agreement between the county and the *Illinois Department of Corrections* are exempt from the provisions of this mandatory period of monitored release." (Emphasis added.)). But, in assigning the responsibility for establishing and administering the program, section 5-8-1.2 does not use the phrase "Illinois Department of Corrections" or "Department of Corrections." "Generally, when the legislature uses certain words in one instance and different words in another, different results were intended." *Emerald Casino, Inc. v. Illinois Gaming Board*, 346 Ill. App. 3d 18, 35 (2003). Thus, we find that the legislature intended to place individuals sentenced to impact incarceration under the supervision of the county sheriff, not the Illinois Department of Corrections.

¶ 47    By contrast, section 5-8-4(d)(6) only requires consecutive sentences for individuals who commit offenses while in the custody of "*the* Department of Corrections." (Emphasis added.) 730 ILCS 5/5-8-4(d)(6) (West 2012). As defendant points out, it does not refer to multiple departments or to any county officials, including the Cook County sheriff. On the other hand, the section does not specifically define "the Department of Corrections" to mean the Illinois Department of Corrections.

¶ 48    But other provisions of section 5-8-4 specifically refer to county officials. For example, if a person charged with a felony commits another felony while "in pretrial detention in a *county jail facility* or *county detention facility*," the sentences for the two felonies must be consecutive. (Emphases added.) 730 ILCS 5/5-8-4(d)(8) (West 2012). If a person commits battery "against a

*county correctional officer* or *sheriff's employee* while serving a sentence or in pretrial detention in a county jail facility," the battery sentence is imposed consecutively with the sentence the person was serving. (Emphases added.) 730 ILCS 5/5-8-4(d)(8.5) (West 2012). And if an individual possesses contraband "while serving a sentence in a *county jail* or while in pre-trial detention in a *county jail*," the sentence for possessing that contraband runs consecutively. (Emphases added.) 730 ILCS 5/5-8-4(d)(10) (West 2012).

¶ 49    These provisions show that, had the legislature intended to include individuals in the custody of county officials in section 5-8-4(d)(6), it would have used some language suggesting as much. But section 5-8-4(d)(6) uses the phrase "Department of Corrections" (730 ILCS 5/5-8-4(d)(6) (West 2012)), not "sheriff" or "county jail" or "county correctional officer."

¶ 50    Other provisions of the Unified Code of Corrections also show that "the Department of Corrections" refers to an Illinois governmental agency, not a county agency. Chapter III of the Unified Code of Corrections (730 ILCS 5/Ch. III (West 2012)) spells out the powers of the Illinois Department of Corrections. That chapter defines "Department" as "the Department of Corrections *of this State*," not the various corrections departments of Illinois counties. (Emphasis added.) 730 ILCS 5/3-1-2(e) (West 2012). The Department is given the power "to accept bids from *counties* and municipalities for the construction, remodeling or conversion of a structure to be leased to *the Department of Corrections* for the purposes of its serving as a correctional institution or facility." (Emphases added.) 730 ILCS 5/3-2-2(1)(c) (West 2012). The Department of Corrections may build juvenile detention centers and "charge a per diem to the *counties* as established by the Department to defray the costs of housing each minor in a center." (Emphasis added.) 730 ILCS 5/3-2-2(c-5) (West 2012). "*The Department of Corrections* may provide consultation services for the design, construction, programs and administration of correctional

facilities and services for adults operated by *counties* and municipalities and may make studies and surveys of the programs and the administration of such facilities." (Emphases added.) 730 ILCS 5/3-15-2(c) (West 2012).

¶ 51     Each of these provisions shows that the legislature has drawn a clear distinction between "the Department of Corrections" and county entities. If we were to accept the State's argument that "the Department of Corrections" referred to in section 5-8-4(d)(6) includes county corrections officials, we would run afoul of the numerous provisions of the Unified Code of Corrections envisioning that the Department of Corrections is a state entity that operates independently of counties. Thus, the plain language of section 5-8-4(d)(6) indicates the legislature's intent to exclude individuals in the custody of county correctional offices.

¶ 52     The State simply assumes that "the Department of Corrections" referred to in section 5-8-4(d)(6) includes "the Cook County Department of Corrections." It offers no explanation for why we should treat those entities as one and the same. To the contrary, as we have explained above, such an assumption is unwarranted.

¶ 53     We find defendant's interpretation of the phrase "the Department of Corrections" as referring to the Illinois Department of Corrections alone to be reasonable. Consequently, section 5-8-4(d)(6) is, at the very least, ambiguous with respect to offenders in the custody of the county impact incarceration program. See *In re B.L.S.*, 202 Ill. 2d 510, 515 (2002) ("A statute is ambiguous if it is capable of more than one reasonable interpretation."). But, as we explain more fully below, that is not the only reason why section 5-8-4(d)(6) is ambiguous.

¶ 54                                         2. "Held"

¶ 55     Our second basis for finding that section 5-8-4(d)(6) is ambiguous with respect to individuals, like defendant, on monitored release from county impact incarceration is that the

statute provides that an individual in the custody of the Department of Corrections at the time he commits a subsequent offense must serve his sentence for that offense consecutive "to the sentence under which the defendant is *held* by the Department of Corrections." (Emphasis added.) 730 ILCS 5/5-8-4(d)(6) (West 2012). For the reasons explained below, even if we agreed with the State that "the Department of Corrections" included a county correctional facility (we do not), the use of the word "held" suggests that the statute applies to individuals only in *physical* custody of the correctional facility, not to individuals on monitored release.

¶ 56    Our conclusion is guided by our supreme court's decision in *People ex rel. Gibson v. Cannon*, 65 Ill. 2d 366, 368 (1976). There, the defendant was on parole after serving five years in the penitentiary when he committed a burglary. At the time of his sentencing, the following statute was in effect:

> " 'A sentence of an offender committed to the Department of Corrections at the time of the commission of the offense shall not commence until expiration of the sentence under which he is held by the Department of Corrections.' " *Id.* at 369 (quoting 1972 Ill. Laws 2258 (§ 5-8-4(f)).

The court noted that a person released on parole remains in the custody of the Department of Corrections. *Id.* at 370. But the court highlighted the use of the word "held" in the statute and found that " '[h]eld' connotes a state or degree of physical restraint" that was inconsistent with a parolee's status. *Id.* The court noted that the "lack of physical restraint is underscored by the fact that a parolee is entitled to a hearing before his parole is revoked," at which he is entitled to notice of the charges against him and the ability to call witnesses on his behalf. *Id.* The court concluded that the statute was ambiguous because of its simultaneous reference to individuals "committed" to the Department of Corrections and individuals "held" by the Department of

Corrections. *Id.* Because the statute was ambiguous, the court applied the rule of lenity and strictly construed it in defendant's favor. *Id.* at 370-71.

¶ 57   Section 5-8-4(d)(6) mirrors the language of the statute at issue in *Cannon*. Section 5-8-4(d)(6) provides that an individual "in the custody of the Department of Corrections" at the time he commits an offense must serve his sentence for that offense consecutive to "the sentence under which the defendant is *held* by the Department of Corrections." (Emphasis added.) 730 ILCS 5/5-8-4(d)(6) (West 2012). As our supreme court recognized, the use of the word "held" implies physical confinement. But a defendant on monitored release from county impact incarceration is not physically confined. Rather, a person on monitored release must "report or appear in person before any such person or agency as directed by the court or the Sheriff" (730 ILCS 5/5-8-1.2(h)(2) (West 2012)), may not leave the State without consent of the court or sheriff (730 ILCS 5/5-8-1.2(h)(4) (West 2012)), and must "permit representatives of the Sheriff to visit at the person's home or elsewhere to the extent necessary for the Sheriff to monitor compliance with the program." 730 ILCS 5/5-8-1.2(h)(5) (West 2012). These requirements would be unnecessary if a defendant were "held" by the correctional facility.

¶ 58   And like parolees charged with violating their parole, individuals on monitored release from county impact incarceration have a right to notice of the charges (730 ILCS 5/5-6-4(a)(1) (West 2012)) and a hearing (730 ILCS 5/5-6-4(b) (West 2012)) at which the State bears the burden of proof and the defendant has "the right of confrontation, cross-examination, and representation by counsel." 730 ILCS 5/5-6-4(c) (West 2012). It was these characteristics of parole that convinced our supreme court in *Cannon* that a parolee was not "held" by the Department of Corrections while on parole. *Cannon*, 65 Ill. 2d at 370. We find these same

characteristics persuasive in finding that defendant was not "held" under section 5-8-4(d)(6) when he was on monitored release from county impact incarceration.

¶ 59    Our conclusion is further supported by *People v. Gillespie*, 45 Ill. App. 3d 686, 688-90 (1977), where this court, distinguishing *Cannon*, found that a defendant who committed an offense while on work release was subject to mandatory consecutive sentencing. The court noted that, unlike parolees, "a defendant on work release is in custody and confined to or held by a prison with the only difference in status from that of an ordinary prisoner being that an offender on work release is allowed outside the actual prison to a limited extent." *Id.* at 688-89. Moreover, if offenders on work release were absent for an unauthorized reason, they could be prosecuted for the offense of escape. *Id.* at 689.

¶ 60    Monitored release from county impact incarceration does not resemble work release. Offenders on monitored release are not confined to a prison, with only limited time outside the prison walls. Rather, they are among the general population, albeit with reporting requirements and travel restrictions. 730 ILCS 5/5-8-1.2(h) (West 2012). If an offender violates the conditions of his monitored release, he is subject to imprisonment for the same period initially applicable to his offense, not for a prosecution for the separate offense of escape. 730 ILCS 5/5-6-4(e) (West 2012). Thus, individuals like defendant on monitored release more closely resemble parolees than prisoners on work release, and the reasoning of *Cannon* applies rather than the reasoning of *Gillespie*.

¶ 61    As shown by *Cannon*, the use of the word "held" in section 5-8-4(d)(6), as applied to an individual on monitored release from county impact incarceration, creates an ambiguity in that statute. We now turn to the effect of the two ambiguities that we have identified.

¶ 62                                3. The Rule of Lenity

- 19 -

¶ 63    Having found that section 5-8-4(d)(6) is ambiguous in two respects with regard to individuals on monitored release from county impact incarceration, we also find that application of the rule of lenity is appropriate. The rule of lenity provides that "ambiguous criminal statutes will generally be construed in the defendant's favor." *Gutman*, 2011 IL 110338, ¶ 12; see also *Cannon*, 65 Ill. 2d at 371 (" 'If a statute creating or increasing a penalty or punishment be capable of two constructions, undoubtedly that which operates in favor of the accused is to be adopted.' " (quoting *People v. Lund*, 382 Ill. 213, 216-17 (1943)). Thus, we adopt the construction of section 5-8-4(d)(6) which favors defendant, *i.e.*, that section 5-8-4(d)(6) does not apply to an individual on monitored release from county impact incarceration.

¶ 64    In sum, we reject the State's argument that the trial court properly sentenced defendant to consecutive sentences under section 5-8-4(d)(6). Defendant was not in the custody of the Department of Corrections when he committed the instant offense; he was in the custody of the Cook County sheriff. Nor are we convinced that that provision even applies to individuals, like defendant, who commit offenses while serving a period of monitored release from county impact incarceration under section 5-8-1.2. Because no other provision of section 5-8-4 arguably required or authorized defendant's consecutive sentence, we find that the trial court erred in imposing consecutive sentences.

¶ 65                                    4. Plain Error

¶ 66    We must now consider whether this error constitutes plain error exempt from forfeiture. In order to find plain error "[i]n the sentencing context, a defendant must *** show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *People v. Hillier*, 237 Ill. 2d 539, 545 (2010).

¶ 67    Defendant argues that both prongs apply. With respect to the first prong, defendant notes that the trial court imposed a minimum-term sentence of four years for his possession of 15 to 100 grams of heroin. Thus, defendant argues that the trial court "was not trying to sentence [him] harshly," and the court "would not likely have sentenced him harshly had [the court] correctly understood the law." Defendant also contends that the second prong applies because, "[b]y misunderstanding consecutive sentencing, the [trial court] denied [defendant] a fair sentencing hearing."

¶ 68    This court has previously held that a trial court's mistaken belief that consecutive sentences are required constitutes plain error under the second prong "[b]ecause the right to be lawfully sentenced is a substantial right." (Internal quotation marks omitted.) *People v. Dover*, 312 Ill. App. 3d 790, 799-800 (2000); see also *People v. Moncrief*, 276 Ill. App. 3d 533, 535 (1995); *People v. Wacker*, 257 Ill. App. 3d 728, 732 (1994) (recognizing, in *dicta*, that improper imposition of consecutive sentences might violate defendant's fundamental rights under second prong). More generally, our supreme court has stated that "[t]he imposition of an unauthorized sentence affects substantial rights" under the second prong of plain error. *People v. Hicks*, 181 Ill. 2d 541, 545 (1998); see also *In re Danielle J.*, 2013 IL 110810, ¶ 32 ("Plain error may properly be invoked where a count misapprehends or misapplies the law." (Internal quotation marks omitted.)).

¶ 69    Here, the trial court misapprehended the law in ordering that defendant serve his sentence in this case consecutively with his sentences in his prior cases. This misapprehension denied defendant of his substantial right to be given a proper sentence under the law. We hold that this error constituted second-prong plain error.

¶ 70    The State argues that this error was not plain error because "defendant cannot establish prejudice where the evidence is beyond overwhelming that the court's finding was inevitable." We hardly see how we can characterize the trial court's finding as "inevitable" when it was incorrect as a matter of law. In fact, most of the State's argument against the application of plain error is an argument about the applicability of section 5-8-4(d)(6). But as we explained above, the State's argument is unavailing.

¶ 71    Because we find that this error constituted plain error, we decline to reach defendant's alternative argument that his counsel was ineffective for failing to object to the consecutive sentences.

¶ 72                          C. Extended-Term Sentences

¶ 73    Finally, defendant contends, and the State concedes, that the trial court erred in imposing extended-term sentences on the lesser Class 4 felony convictions where he was also convicted of a Class 1 felony. He requests this court to reduce his four-year sentences on the two Class 4 felonies to the maximum nonextended term of three years' imprisonment.

¶ 74    Defendant is correct that an extended-term sentence may be imposed only for the most serious class of offense of which defendant was convicted. 730 ILCS 5/5-8-2 (West 2012); *People v. Richardson*, 348 Ill. App. 3d 796, 807-08 (2004). Defendant was subject to the statutory range of one to three years' imprisonment on his Class 4 felonies (his convictions for possession of less than 15 grams of heroin). See 720 ILCS 570/402(c) (West 2012) (possession of less than 15 grams of heroin is Class 4 felony); 730 ILCS 5/5-4.5-45 (West 2012) (sentencing range for Class 4 felonies is one to three years' incarceration). Pursuant to our authority under Illinois Supreme Court Rule 615(b)(4), we reduce the sentences on the two Class 4 felonies to three years' imprisonment, the maximum nonextended term.

¶ 75                              III. CONCLUSION

¶ 76    For the reasons stated, we affirm defendant's conviction. We remand for resentencing, with directions that the trial court order defendant's sentence to be served concurrently with those imposed in Cook County circuit court case Nos. 08 CR 1513801 and 11 CR 0497201, and to reduce the sentences for the Class 4 felonies to three years' incarceration.

¶ 77    Conviction affirmed; remanded for resentencing with directions.