2021 IL App (1st) 190992-U

No. 1-19-0992

Order filed June 1, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 6577 |
| | ) | |
| JERRY HARRELL, | ) | Honorable |
| | ) | James M. Obbish, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE PIERCE delivered the judgment of the court.
Presiding Justice Walker and Justice Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm defendant's conviction for delivery of a controlled substance where the
State proved beyond a reasonable doubt that he delivered 1 gram or more but less
than 15 grams of heroin.

¶ 2    Following a bench trial, defendant Jerry Harrell was convicted of delivery of a controlled

substance (1 gram or more but less than 15 grams of any substance containing heroin) (720 ILCS

570/401(c)(1) (West 2018)) and sentenced to six years' imprisonment. On appeal, defendant

argues his conviction should be reduced to the Class 2 felony for simple delivery of heroin because

the State failed to prove beyond a reasonable doubt that the heroin he delivered weighed more than one gram. We affirm.

¶ 3    Defendant was charged with one count of delivery of 1 gram or more but less than 15 grams of heroin stemming from an April 17, 2018, narcotics investigation in the area of Van Buren Street and Pulaski Road in Chicago.

¶ 4    At trial, Chicago police officer Daniel Prskalo testified that on that date, he was working as part of a team of officers conducting a "buy bust" which he described as "when an undercover [officer] goes into an area, buys narcotics from the individual and the same day they are arrested." Prskalo was working as the undercover officer that day and saw defendant, whom he identified in court, standing on the corner of two intersections. Prskalo drove past defendant, who shouted "blows," which Prskalo understood to mean the sale of heroin. Prskalo informed the rest of his team, including a description of defendant and the location where this occurred. After surveillance had been established in the area, which took approximately two minutes, Prskalo returned to the area to observe defendant.

¶ 5    When he saw defendant again, Prskalo asked him "for the blows," to which defendant responded "this is not a drive-up service, that you had to call for service in order to purchase heroin." Prskalo asked defendant for his cell phone number, which defendant gave to him. Prskalo dialed the phone number and then informed defendant in person he wanted to buy "two." Defendant told Prskalo to park his vehicle behind a car "about four houses to the west," and then walked out of Prskalo's sight.

¶ 6    Approximately after a minute or less, Prskalo saw defendant again when he walked to the passenger side of Prskalo's vehicle. Defendant informed Prskalo "this is the good stuff," and

"dropped two clear capsules" on the passenger seat. Prskalo handed defendant two $10 bills, which were prerecorded funds used by the police to purchase narcotics. Defendant then walked away from the vehicle, and Prskalo did not see where he went. Prskalo informed the surveillance team of a positive heroin purchase and gave a description of defendant's clothing and where he last saw him. The officers detained defendant, and Prskalo identified him as the person who had sold him the heroin.

¶ 7    At the station, Prskalo inventoried the heroin according to police inventory procedures. He identified a copy of his prerecorded fund sheet for April 2018, showing the funds he used on the day of the incident, along with a photocopy of the bills. Prskalo also identified photographs depicting the heroin he purchased, a screenshot of his cell phone with defendant's phone number, defendant at the scene, and his vehicle parked with defendant crossing the street. After Prskalo inventoried the heroin, it was sent to the crime lab in a sealed package.

¶ 8    On cross-examination, Prskalo stated that he was not specifically looking for defendant on the day of the "bust buy" and first encountered defendant when he yelled "blows" once. The surveillance vehicle was parked approximately 30 feet from Prskalo. Prskalo did not have a telephone conversation with defendant. Prskalo did not record the interaction with defendant, who had been standing within four feet of him. After Prskalo parked his vehicle he lost sight of defendant for approximately "a minute or less." After the sale, Prskalo lost sight of defendant and radioed his team with his description. Prskalo then conducted a show-up "about four minutes later" and did not recall whether defendant was in handcuffs at that time, but recalled he was not in a squad car.

¶ 9     On redirect examination, Prskalo testified that Officer Byrd took the photographs but he did not know the vantage point from which Byrd took the photographs.

¶ 10     Chicago police officer Sau Haidari testified that he was part of the surveillance team conducting a narcotics investigation on April 17, 2018. Haidari was working as a surveillance officer in a "covert capacity." Shortly after 1:00 p.m., he received radio communications from Prskalo about "contact with an individual." Haidari followed Prskalo and saw Prskalo speak with a person whom he identified in court as defendant. Haidari saw Prskalo park his vehicle "[a]cross the street," and observed defendant walk past the vehicle and enter a gangway approximately 80 to 100 feet from his surveillance point where Haidari lost sight of him.

¶ 11     "Within a minute," defendant returned and approached Prskalo's vehicle on the passenger side. Haidari saw defendant lean into the vehicle, step back, and Prskalo drive away. Prskalo alerted the team to the "positive transaction" and gave a description of defendant which matched Haidari's observations of him. Haidari maintained surveillance of defendant and watched him reenter the gangway. He informed the rest of the team where defendant was located and observed the enforcement officers detain him. Haidari identified photographs taken of the incident and indicated they truly and accurately depicted the events he observed on the date in question.

¶ 12     On cross-examination, Haidari stated he did not have a conversation with defendant and first observed him when defendant followed Prskalo. Haidari did not see defendant place narcotics into Prskalo's vehicle or Prskalo tender currency to defendant because his view was obstructed by Prskalo's vehicle. Haidari did not hear the conversation Prskalo had with defendant. Haidari did not use anything to enhance his vision nor did he record the incident.

¶ 13　Chicago police officer Steven Laureto testified that he, along with his partner, Officer Mellett, was working as an enforcement officer in an unmarked police vehicle as part of the surveillance team on April 18, 2018. "Sometime a little bit before 1:18" in the afternoon, he received a communication that Prskalo engaged in a "hand-to-hand transaction" with a person Prskalo described, whom Laureto identified in court as defendant. On the scene, Laureto observed defendant, who matched the description provided by Prskalo. Laureto and Mellett approached him for a field interview. The officers detained defendant and Mellett performed a custodial search with Laureto present at the time. Mellett recovered two $10 bills which were part of the prerecorded funds used by Prskalo. The bills were commingled with defendant's personal money.

¶ 14　On cross-examination, Laureto explained that he was not present for Prskalo's interaction with defendant, who matched the description relayed by Prskalo. After the officers placed defendant in custody, Mellett performed a custodial search and recovered the prerecorded funds but did not recover any narcotics from defendant's person.

¶ 15　The parties then proceeded by way of stipulation. The parties first stipulated that, if called, Officer Matthew Mellett would identify defendant in open court and testify that he arrested defendant on April 17, 2018. He would further testify that he recovered two bills of prerecorded fund money from defendant and inventoried the bills at the police station.

¶ 16　The parties next stipulated that, if called, Shandra Girtman would testify that she is a forensic chemist employed by the Illinois State Police Crime Lab. Girtman opened Inventory No. 14150183, an envelope containing two items which she received from the Chicago Police Department. She "performed tests commonly accepted in the area of forensic chemistry for

ascertaining the presence of a controlled substance on the two items." She would also testify as to the following:

"that after performing the tests on the contents of Inventory No. 14150813 she tested both of the items. It would be her opinion within – based on her education training, [*sic*] and experience, that the contents of the two items were positive for the presence of heroin and that the actual weight of the items was 1.2 grams.

The chemist would further testify that the total estimated weight of the two items was also 1.2 – total actual weight was 1.2 grams; that after the testing and analysis of Inventory No. 14150813 was completed she would further testify it was again sealed and she would be able to identify it in open court as the same items that she tested and that they are sealed."

¶ 17    The court found defendant guilty of delivery of a controlled substance "in excess of a gram." In ruling, the court noted the officers were "extraordinarily credible" and "went to great lengths" to ensure the correct individual who sold the heroin was the person who was arrested and charged. The court also noted that defendant had the two $10 prerecorded bills on his person when he was arrested, and stated "[t]he State has overwhelmingly proved their case beyond a reasonable doubt." After denying defendant's motion for a new trial, the court sentenced defendant as a Class X offender, due to his criminal history, to six years' imprisonment.

¶ 18    On appeal, defendant challenges the sufficiency of the evidence to sustain his conviction, arguing the State failed to prove the weight of the heroin he delivered. Specifically, he contends that the stipulated testimony of Shandra Gitman "does not make clear that the weight included only the heroin and not also the capsules containing the heroin," so it is impossible to know the

weight of the heroin alone. Defendant requests this court reduce his conviction from the Class 1 offense, to the lesser-included Class 2 offense of simple delivery of heroin.

¶ 19    The standard of review for a challenge to the sufficiency of the evidence to sustain a conviction is "whether, viewing the evidence in the light most favorable to the State, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *People v. Belknap*, 2014 IL 117094, ¶ 67 (quoting *People v. Collins*, 106 Ill. 2d 237, 261 (1985)). The trier of fact, in this case the trial judge, has the responsibility of resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. *People v. Brown*, 2013 IL 114196, ¶ 48. The reviewing court must allow all reasonable inferences from the evidence to be drawn in favor of the State. *People v. Martin*, 2011 IL 109102, ¶ 15. " 'In weighing evidence, the trier of fact is not required to disregard inferences which flow normally from the evidence before it, nor need it search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Hardman*, 2017 IL 121453, ¶ 37 (quoting *People v. Jackson*, 232 Ill. 2d 246, 281 (2009)). A reviewing court will not reverse a criminal conviction unless the evidence is "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *Jackson*, 232 Ill. 2d at 281. For the following reasons, we find the evidence sufficient to support defendant's conviction.

¶ 20    To sustain defendant's conviction for delivery of heroin as charged in this case, the State had to prove beyond a reasonable doubt that he knowingly delivered 1 gram or more but less than 15 grams of any substance containing heroin to Officer Prskalo. 720 ILCS 570/401(c)(1) (West 2018). Because the State charged defendant with delivering a specific amount of heroin—1.2 grams—and there is a lesser-included offense for simple delivery of heroin, the weight of the

heroin was an essential element of the offense that the State had to prove beyond a reasonable doubt. *People v. Jones*, 174 Ill. 2d 427, 428-29 (1996).

¶ 21    In this court, defendant does not dispute that he delivered heroin to Prskalo. Rather, he argues that the State failed to prove beyond a reasonable doubt that the heroin weighed more than 1 gram.

¶ 22    Viewing the evidence in a light most favorable to the State, and allowing all reasonable inferences drawn in favor of the State, we find a rational trier of fact could find beyond a reasonable doubt that defendant delivered 1.2 grams of heroin. In reaching this conclusion, this court's decision in *People v. Lashley* is instructive. In *Lashley*, a police officer performing narcotics surveillance observed the defendant conduct transactions with people in vehicles. 2016 IL App (1st) 133401, ¶ 7. Another officer recovered 10 items containing suspect heroin from the defendant's person and 83 items containing suspect heroin from a nearby gangway, which were tested by a forensic chemist. *Id.*, ¶¶ 10-12. At trial, the parties stipulated that the forensic chemist would testify that 65 of the 83 items were tested and were positive for the presence of heroin, the "actual weight of those items was 15.2 grams," and the actual weight of the items recovered from defendant was 3.9 grams. *Id.*, ¶ 12. The court convicted the defendant of one count of possession of between 15 and 100 grams of heroin and two counts of possession of less than 15 grams of heroin. *Id.*, ¶ 14.

¶ 23    On appeal, the defendant argued in part that the evidence was not sufficient to convict him of possession of between 15 and 100 grams of heroin because the stipulation indicated the chemist weighed both the heroin and the packaging and the packaging likely weighed more than .2 grams. *Id.*, ¶ 24. We rejected the defendant's argument because while the stipulation is "not entirely clear"

whether the chemist weighed both the powder and the bags, or subtracted the weight of the bags from the overall weight of the tested items, "[i]t is more likely that the weight of the bags did not factor into the chemist's calculation," as the chemist weighed the drugs "for the express purpose of preparing evidence for the State's prosecution." *Id*., ¶ 28. We also explained that the defendant was free to cross-examine the witness on these points but did not do so, thus "no contrary evidence" was put forth by defendant, and the State presented sufficient evidence as to the weight of the heroin. *Id*., ¶ 29.

¶ 24    Here, we find the State similarly presented sufficient evidence to prove that defendant delivered 1 gram or more but less than 15 grams of heroin. As mentioned, we must view the evidence in the light most favorable to the State, including reading all reasonable inferences in its favor. See *Brown*, 2013 IL 114196, ¶ 48; *Martin*, 2011 IL 109102, ¶ 15. In this case, a reasonable inference may be made that, when Girtman weighed the two items, she only weighed the heroin and not the capsules, because she was doing so "for the express purpose of preparing evidence for the State's prosecution." *Lashley*, 2016 IL App (1st) 133401, ¶ 28. In light of this reasonable inference, a rational trier of fact could have found beyond a reasonable doubt that defendant delivered 1.2 grams of heroin.

¶ 25    Defendant acknowledges this court's holding in *Lashley* but argues that it is both distinguishable and incorrectly decided. We disagree, and decline to depart from its well-reasoned analysis. As in *Lashley*, the parties stipulated to this evidence, and defendant had the opportunity to raise a challenge to the weight of the heroin at trial, but instead put forth "no contrary evidence." See *id*., ¶ 29; see also *People v. Kane*, 2013 IL App (2d) 110594, ¶ 19 ("A party who agrees to the

admission of evidence through a stipulation is estopped from later complaining about that evidence being stipulated into the record."). Accordingly, we affirm defendant's conviction.

¶ 26    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 27    Affirmed.